SARAH SMITH, ET AL. *v.* DOUGLAS BIDDLE

[No. 104, October Term, 1946.]

*Decided April 18, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*James Morfit Mullen,* with whom were *Samuel J. Aaron* and *Howard L. Aaron* on the brief, for the appellants.

*Ernest L. Perkins* and *Robert P. McGuinn* for the appellee.

GRASON, J., delivered the opinion of the Court.

This appeal is from a decree entered by the Circuit Court of Baltimore City for the specific performance of a contract. The contract is in writing, under seal, executed the 25th day of April, 1946, by George W. Evans, Attorney for Sarah Smith, vendor, and Douglas L. Biddle, vendee.

The property is known as 905 Madison Avenue, and is subject to an annual ground rent of $65. It is a two-

story structure, the upper floor being occupied by Sarah Smith, as an apartment, and the lower floor is used as a tavern and lunchroom, where beer and light wines are sold.

The purchase price for the property is $4,000, of which $500 was paid to Evans at the time of the signing of the contract, and the balance of the purchase price was to be paid by "a mortgage or mortgages to be arranged by the vendor on a building and loan association plan without bonus." The contract provided that if the vendee failed to get a light wine and beer license it was to be void and the down payment of $500 was to be refunded. It contained the usual provision that upon payment of the unpaid purchase money a deed was to be executed at the vendee's expense by the vendor, which would convey a good and merchantable title. Taxes, ground rent, water rent and all public charges were to be paid or allowed by the vendor to date of settlement, which "shall be within 45 days from the date hereof."

The first floor of this property, used as a tavern, had been vacant for nearly a year before the signing of the contract. Hawkins and Bost held a license to sell beer and wine at this place and that license was duly transferred to the vendee.

George W. Evans is a lawyer and settled the estate of the husband of the vendor about a year ago, and since that time he has been counsel for the vendor. She wanted to sell this property on Madison Avenue, and placed the same in his hands to procure a purchaser. He had two offers, one for the sum of $5,500, and another for the sum of $4,250. These negotiations failed because the prospective vendees could not raise the money to pay for the property. The third offer, of $4,000, was made by the vendee, accepted, and resulted in the signing of the contract involved in this case. Evans was carrying on negotiations with the vendee, and the transfer of the wine and beer license from Hawkins and Bost to the vendee gave some concern. They wanted to effectuate this transfer before the old license to Hawkins

and Bost expired. Evans made a hurried trip from New York to Baltimore, met Biddle and one or two other men at his office, and the contract in question was drawn up and executed. The vendor was not present at that time. The evidence is that Evans then called the vendor over the telephone, explained the matter fully and read the contract to her, named the contract price of $4,000. Evans testified that the vendor told him to put the matter through, which he did.

In order to effectuate the transfer of the license it was necessary to procure the signature of the owner of the property. The purchaser and his attorney went from Evans's office to the home of the vendor, and she signed the necessary paper for the transfer of the license. They say that she was told that day of the purchase price. Evans did not go to the home of the vendor on that occasion, because he had to return immediately to New York for business purposes. All of the witnesses to the transaction testified that the vendor knew that the property was being sold for $4,000. The only evidence in contradiction is the testimony of the vendor. She repudiated the matter and contends that she did not authorize Evans to sell the property for a sum less than $4,500.

Appellee seems to think that Rule 9 of this Court, relating to appeals generally, and Section 40 of Article 5, Code, 1939, bar the appellants from raising in this court matters not presented and argued before the chancellor, but we will pass the matter with the comment that this court will always inquire into the question of whether a contract sought to be specifically enforced is in form that the law requires. Certainly our rule, and the provisions of the code cited, would not bar this court in an inquiry as to whether a contract for the sale of land was violative of the Statute of Frauds, or whether a third party had authority to sign a contract on behalf of the vendor; or whether the contract was so uncertain and duplicitous as to be unenforceable.

It will not be necessary for us to engage in a discussion of the many interesting points raised in appellants' brief, inasmuch as we are of opinion that the contract is so vague and uncertain as to render it unenforceable.

The purchase price for the property, named in the contract, is $4,000, of which $500 was paid. The balance of the purchase price was to be raised by a mortgage or mortgages to be arranged by the vendor, on the building and loan association plan, without bonus. How long such "mortgage or mortgages" were to run is not stated, nor is it stated what interest the same would draw. How such "mortgage or mortgages" were to be amortized is not provided for. If the vendor secured a mortgage, would the vendee be required to accept the same? Could he say he wanted one kind of mortgage and the vendor say she wanted a different kind of mortgage? Would there be any standard fixed, whereby the chancellor could say to both the vendor and vendee, you are governed by the standard fixed by your contract, and you must perform? If there is no such standard in the contract how can the contract be said to be mutual, and without mutuality a contract cannot be enforced. These are matters so apparent that they need not be labored.

In *Tarses v. Miller Fruit & Prod. Co.*, 155 Md. 448, 142 A. 522, 523, Judge Parke quoted Lord Hardwicke in *Burton v. Lister*, 3 Atk. 386, as follows:

"Nothing is more established in this court than that every agreement of this kind ought to be certain, fair, and just in all its parts. If any of these ingredients are wanting in the case, this court will not decree a specific performance." See authorities there cited.

In *Busey v. McCurley*, 61 Md. 436, 48 Am. Rep. 117, it is said:

"In all such cases the agreement must be sufficiently definite to guide the Court in the direction to be given for the specific performance, or, at any rate, that it may be made certain and definite upon proper inquiry."

In *Myers v. Forbes*, 24 Md. 598, at page 611, the court said:

"The insuperable difficulty in granting the relief prayed consists, in our opinion, in the want of definiteness and certainty in the terms of the contract sought to be enforced. In such a case, to repeat the language of this court, in *Stoddert v. Bowie's Ex'r*, 5 Md. [18], 28, 'it is not only necessary to prove that an agreement was made, but the terms of the agreement must be so clearly and fully shown that the court can have no difficulty in knowing what the terms are, so as to be certain of carrying into effect the contract made by the parties. Passing a decree for specific execution upon proof short of this, instead of executing the agreement of the parties, would be making one for them, which the court certainly has no authority to do'."

In that case the contract was silent as to the term for which an intended lease was to be made. It was held that the term of the lease was an essential part of it and in the absence of any stipulation to that effect a court of equity cannot decree specific performance.

See *Bond v. Weller*, 141 Md. 8, 118 A. 142; *Trotter v. Lewis*, 185 Md. 528, 45 A. 2d 329; *Gibbs v. Meredith*, 187 Md. 566, 51 A. 2d 77; *Garbis v. Weistock*, 187 Md. 549, 51 A. 2d 154; *Bank v. Hurst's Estate*, 187 Md. 333, 50 A. 2d 133; *Doering v. Fields*, 187 Md. 484, 50 A. 2d 553.

Evans testified that "the Mutual Benefit had passed the loan for $3,500.00." He referred to the Mutual Benefit Society, a life insurance company. This is practically all the evidence in the case concerning a mortgage to be executed on the property. Nobody with authority to bind the Mutual Benefit Society testified that this company had granted or would grant a loan on this property. Evans's testimony is entirely hearsay.

Biddle testified that Evans arranged for the mortgage, and that he (Biddle) "talked to the president of the bank."

A contract for the sale of land must be in writing, and signed by the party to be charged, or his authorized agent. Its terms must be clear, unambiguous and certain in all its parts, and fair and mutual. Specific performance is not a matter of right, but rests in the sound, equitable discretion of the chancellor. A contract for the sale of land, which on its face is uncertain, indefinite, vague and indistinct in a material matter, does not gratify the Statute of Frauds. It will not do to offer to do something outside the contract that is thought would make the contract certain, because that would be to import something into the contract, and would be to change, alter, or vary the terms of the written contract. We cannot lift the rule in this case upon the hearsay evidence of Evans that he had arranged for a mortgage. The appellee started in this case with an unenforceable contract, because it is too vague and indistinct. No matter what the evidence is, the contract is still too vague and indistinct.

*Decree reversed, with costs to appellants.*