HARRIS, ADMINISTRATRIX ET AL. *v.* KIRSHNER
[No. 50, October Term, 1949.]

*Decided December 9, 1949.*

*Morton H. Perry,* with whom was *William Sinsky* on the brief, for the appellant.

*William L. Siskind* and *Sidney Blum,* with whom was *Siskind & Siskind* on the brief, for the appellee.

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Bertha Rose Harris, as Administratrix of the estate of Joseph G. Harris, and individually, plaintiff below, from a judgment *n. o. v.* for costs rendered in the Baltimore City Court by the trial judge, without a jury, in favor of the appellee, Nathan Kirshner, defendant below.

On May 29th, 1948, Joseph G. Harris entered into an alleged agreement with Nathan Kirshner. This agreement is evidenced by the following receipt: "Received from Joseph G. Harris, Two Hundred ($200) Dollars deposit on 3921 Ridgewood Avenue. The price of the property is Eighty-Three Hundred ($8,300.00) Dollars, subject to a ground rent of Eighty-Five ($85) Dollars annually. It is understood and agreed that the seller will provide a mortgage of Six Thousand ($6,000) Dollars and that the buyer is to pay Six Hundred ($600) Dollars as additional deposit on June 10th. If the mortgage is not provided by that date the contract of the sale of property is to be null and void and the deposit of Two Hundred ($200) is to be refunded to the buyer, and upon payment of the unpaid purchase money, a

deed for the property shall be executed at the Vendee's expense by the Vendor, which shall convey the property by a good and merchantable title to the Vendee. Time of settlement June 29th or before." This receipt was signed by J. Siskind, Agent for Nathan Kirshner. On June 8th the following receipt was also given by Nathan Kirshner to Harris:

"Received from Joseph G. Harris, Six Hundred Dollars ($600) additional deposit on 3921 Ridgewood Avenue. The balance of the price of the property is $7500.00 and is to be paid by June 18, 1948."

On June 14, 1948, Joseph G. Harris died. After his death his wife, Bertha Rose Harris, the administratrix of his estate, entered suit against Joseph Siskind and Nathan Kirshner on the common counts and a special count for the return of the $800.00 deposit. A judgment was entered in favor of Joseph Siskind for costs and against Nathan Kirshner for $800.00. A motion for a judgment *n. o. v.* or for a new trial was made by Nathan Kirshner. The judgment *n. o. v.* was granted and judgment rendered in favor of Nathan Kirshner for costs. From the judgment in favor of Kirshner for costs the appellant appeals.

The testimony shows that after the recited receipt was given for $200.00, on June 1st, 1948 Joseph Harris signed an application for himself and his wife, with a building and loan association for "a 12 year 5½% Direct Reduction First Mortgage loan of $6000.00," on the property to be purchased. The principal amount of $29.58 and interest of $27.48 was to be paid monthly. This application is also signed "Agent: Siskind." This loan was approved on June 4th, 1948, and the attorney for the building and loan association instructed to examine the title. A representative of the building and loan association testified that that association had taken all action necessary. Bertha Rose Harris, the wife of Joseph Harris, testified that this mortgage was acceptable to her. After this application was accepted Joseph Harris, on June 8, 1948 paid the additional deposit of $600.00, which he had agreed to pay.

The appellant contends that the contract on its face is indefinite, vague, and indistinct, and does not satisfy the Statute of Frauds because there is nothing set out in the receipts about the terms of the mortgage, length of time, amount of interest, and how it is to be amortized. Of course, a contract for the sale of land must be in writing, signed by the party to be charged or his authorized agent, and its terms must be clear, unamiguous, and certain in all its parts. *Smith v. Biddle,* 188 Md. 315, 321, 52 A. 2d 473, 475. It is true of course, that the contract was indefinite. The only provision as to the terms of the mortgage was that "the seller will provide a mortgage of $6000.00". However, in this case the part of the agreement which was originally too vague has become definite by partial performance. It provided that an additional deposit of $600.00 was to be paid on June 10th, but if the mortgage was not provided by that date the contract was to become null and void and the deposit of $200.00 was to be refunded. The testimony shows that the purchaser and the agent of the seller signed an application with a building and loan association for a $6000.00 mortgage on the property to be purchased. This application definitely set out the terms of the mortgage desired. The loan was approved and the papers forwarded to the attorney of the building and loan association for title examination and record. The purchaser was satisfied with this mortgage because on June 8th he paid the additional $600.00 which was not to be paid unless the mortgage was provided. The terms of the mortgage became certain. The contract, therefore, on June 8th before the required date of settlement by partial performance had become definite. It is said by *Williston on Contracts,* Revised Edition, Volume I, at pages 139, and 140: "If, however, the side of the agreement which was originally too vague for enforcement becomes definite by entire or partial performance, the other side of the agreement (or a divisible part thereof, corresponding to the performance received), though originally unenforceable, becomes binding. And even with-

out performance on either side the original indefiniteness may sometimes be cured by a subsequent definition of the intended performance." *Parks v. Griffith & Boyd Co.,* 123 Md. 233, 246, 91 A. 581; *Caplan v. Buckner,* 123 Md. 590, 601, 91 A. 481.

Immediately after Harris' death, his wife refused to go through with the transaction because she said she could not afford to keep up the house. There is therefore no doubt that Bertha Harris abandoned and rescinded the contract. The primary question before us here is whether the appellee Kirshner agreed to her abandonment and therefore whether the contract was mutually abandoned by all the parties.

The appellant testified that she heard her brother and brother-in-law almost immediately after her husband's death demand the return of the $800.00 deposit, and that she was led to believe that when Kirshner sold the property he would return all her money. Maurice E. Harris, the brother of the deceased, testified that he was at appellant's home immediately after her husband's death. On June 17th he had a conversation with Mr. Siskind and Mr. Siskind told him that he was merely the seller and that he would be satisfied to return the $100.00 commission to Mrs. Harris "if Mr. Kirshner would return the other $700.00 or $800.00, whatever they received; and I spoke to Mr. Kirshner, and he said, 'Why not sell it?' I said, 'We are in a position, I do not know anything about selling it, we were trying to help Mrs. Harris.' He on the other hand, told me if he sold the property, he would be glad to give my sister-in-law back the deposit." Maurice E. Harris further testified that "he (Kirshner) said if he sold the property and it seemed like a good chance it would—he didn't say he would give it to me. I was speaking on my sister-in-law's behalf —that he would return it to her."

David Politzer, the brother of the appellant, testified that immediately after the funeral he told Mr. Siskind that his sister Mrs. Harris could not go through with the purchase and was it possible to return her deposit.

Siskind replied that he would be perfectly willing to return the commission. Politzer further said: "I talked to Mr. Kirshner and he said he would see and he would give Mrs. Harris her deposit back—that several people that I had sent there, if it was possible for me, beings I was dealing in real estate, could send him customer and sell the property, that he would return her money immediately. I have sent him several people." He further said that Kirshner promised to call him back and let him know whether he sold it.

Kirshner testified that he was notified on the telephone that Mrs. Harris was not going through with the transaction and that he told Maurice Harris over the telephone that he was going to sell the house because he needed the money badly. Kirshner said that he never had a deed for the property but a contract of sale from the owner Jesse L. Owings. It appears that on or about July 16th he endorsed this contract of sale to his son-in-law and daughter, Melvin and Beatrice Walpert, for a consideration of $8000.00. The deed dated July 16, 1948, was between Jesse L. Owings and Mary W. Owings, his wife, and Melvin Walpert and Beatrice Walpert, his wife. The consideration was $8,000.00. The Walperts sold the property on August 16, 1948 to a third party for $8750.00. Kirshner did not deny that he told Maurice E. Harris and David Politzer that he would return the $800.00 to Mrs. Harris after the property was sold. When asked the question: "When you sold the property did you communicate with Mrs. Harris and tell her you were going to sell it for her account," Kirshner answered "No." In November 1948, in the presence of David Politzer, he offered to compromise and give Mrs. Harris $400.00.

In this case two witnesses testified that the appellee promised to return the deposit of $800.00 to the appellant when the property was sold. This is not denied by the appellant. He admitted that when he sold the property he did not tell the appellant that he was selling for her account. We find therefore, that the appellee

agreed to the rescission of the contract by the appellant.

Waiver of performance or the abandonment of a contract may be proved by parol evidence. *Herzog v. Sawyer*, 61 Md. 344, 354; *Gibula v. Sause*, 173 Md. 87, 93, 194 A. 826; *Birckner v. Tilch*, 179 Md. 314, 322, 18 A. 2d 222; *Grauel v. Rohe*, 185 Md. 121, 127, 43 A. 2d 201; *Malin v. Robinson*, ??? Md. ???, 70 A. 2d 51, just decided. Without question the appellant abandoned the contract. We are of the opinion that the testimony here is sufficient to show that the appellee assented to the dissolution of the contract.

Here the appellee promised to return the purchase money paid. Of course, when a contract has been mutually abandoned or rescinded the parties are entitled to be placed in *statu quo* and the vendee is entitled to the return of the purchase money paid, even in the absence of an express promise. *Gunby v. Sluter*, 44 Md. 237, 250; *Gibula v. Sause, supra,* 173 Md. 92, 194 A. 826; *Loughran v. Ramsburg*, 174 Md. 181, 186, 197 A. 804; *Grauel v. Rohe, supra,* 185 Md. 127, 43 A. 2d 201.

A motion *n. o. v.* has no place in a trial before a court without a jury, but the court had power on motion for a new trial to open the judgment previously entered and to revise it. Rule 9, General Rules of Practice and Procedure, Part Three, III. Trials. We will treat this case as reopened under the rule and a new judgment entered. That judgment will be reversed.

> *Judgment reversed, and judgment entered for the appellant in the amount of $800.00, with interest from March 29, 1949, with costs.*