### MALIN, EXECUTOR, ET AL. *v.* ROBINSON

[No. 41, October Term, 1949.]

*Decided December 9, 1949.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*James W. Hughes*, with whom was *Roland S. Grubb* on the brief, for appellants.

*E. Kirk Brown* and *E. D. E. Rollins*, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by John P. Malin, as executor of the last will and testament of Warren E. Malin, and individually, defendant below, from a judgment of the Circuit Court for Cecil County against him and in favor of the appellee, Ralph Robinson, plaintiff below, for the return of a deposit paid by the appellee to appellant's decedent on an agreement for the purchase of real estate. The case was tried before the trial judge without a jury.

On August 8, 1946, Warren E. Malin, as seller, entered into an agreement with Ralph W. Robinson, as purchaser, for the sale of garage property in Elkton, Maryland, for the price of $30,000. The agreement acknowledged the receipt of $2,000 as paid on the purchase price. The balance of $28,000 was to be paid on or before September 1, 1946, when title was to pass. The agreement provided that the seller was to renew "the south half of the roof over the garage with a good rubberoid roofing properly applied," and to bring in water from Bow Street to the building. Landlord possession was to be delivered at the time of sale.

After the execution of the contract, early in August, the parties to the agreement went to Philadelphia and

interviewed the representatives of the Chrysler Motor Company in an effort to obtain for Robinson the agency for Chrysler cars in Elkton. Robinson testified that Malin had assured him that there would be no difficulty in getting this agency. No such provision was included in the agreement of sale. In Philadelphia, they were advised by the secretary to the General Manager that distributorships were closed for two years after the war and none were being given at that time.

During the latter part of August, Malin became ill and was confined to the Elkton Hospital. On August 30, 1946, an agreement was signed by the parties to the contract extending the time for settlement to October 1, 1946. Mr. Warren Malin died September 15, 1946. Upon failure of his executor to return the $2,000 paid on the purchase price, suit was entered against him on the common counts and a special count. From a judgment for the return of that deposit with interest the appellant appeals. The appellee argues, with other contentions, that the contract of sale was mutually rescinded or abandoned and that therefore the judgment should be affirmed.

E.Kirk Brown, Esq., of Elkton, who drew the contract of sale, testified that on August 27th, Mr. Robinson had obtained the money to settle with Mr. Malin and they went to the hospital on that date to make settlement. On account of Malin's illness this could not be done. Malin referred Mr. Robinson and Mr. Brown to Mr. C. A. Ringgold, Treasurer of the Elkton Banking and Trust Company as his representative to make the settlement, but they were informed by Mr. Ringgold that settlement could not be made at that time because he did not know whether Mr. Malin's wife, from whom he was separated, would sign the deed. Mr. Ringgold testified that he recalled that Mr. Kirk Brown and Mr. Ralph Robinson came to see him about August 27, 1946, regarding this particular settlement and talked about making settlement in a few days. "However, a question was brought up, I believe by myself, as to whether or not Mrs. Malin

would not have to sign the deed to this property, she still being alive at the time. I think that was the main question that was brought up at this time." Mr. Brown testified that when told of Mr. Ringgold's statement, Mr. Warren Malin, on August 28th, said that he had spent most of the $2,000 and could not repay it but when he got out of the hospital he would pay it back. At the suggestion of Attorney Brown an agreement was signed on August 30th, extending the time of settlement to October 1st. Mr. Brown testified that on that day Malin told him that he knew it was impossible for Mr. Robinson to get the Chrysler agency and that tender of the purchase price was not necessary. In spite of this, however, the extension agreement was signed. Therefore, if there was any abandonment of the agreement it must have occurred after the signing of the extension on August 30, 1946.

On September 21, 1946, the will of Warren E. Malin was admitted to probate and Mr. John P. Malin named executor. The executor testified that in the latter part of September, 1946, he saw Mr. Robinson at his home and was told by Robinson that he was no longer interested in the property. This conversation is denied by Mr. Robinson. During October, after the extension agreement expired, Mrs. Warren Malin died. Mr. Brown testified that about November 8th Mr. John Malin said that he would rather keep the property than sell it, but owing to financial conditions he did not know what he could do about it. There was then some conversation about the re-payment of the $2,000. Mr. Brown then suggested to the executor that he employ counsel to represent him as he represented Mr. Robinson and he wrote a letter to Malin to that effect. The appellant then employed Mr. Roland S. Grubb of West Chester, Pennsylvania, as his attorney. A few days prior to December 1, 1946, Robinson says—Grubb says November 16, 1946—Mr. John Malin, and Roland S. Grubb, visited Mr. Robinson and talked to him about the property and discussed with him the contract. At that time Mr. Robinson told them he

was not interested in the place and wanted his deposit back because he could not get the Chrysler agency which Mr. Warren Malin had assured him he could get and that his purpose in buying the garage property was to get that agency. Therefore Robinson abandoned the contract. The question arises as to whether the appellant agreed to the rescission of the contract. If so there was a mutual abandonment or rescission.

Mr. Brown testified that some time between December 1, 1946, and February 10, 1947, a conference was held. Present with him were Mr. Grubb, Mr. John Malin and Mr. Robinson. At that time Mr. Robinson insisted that the property was not of any use to him and that he had already told Mr. John Malin that he did not want it under the circumstances. On February 10, 1947, Mr. Grubb, as attorney for Malin, wrote a letter to Robinson advising him that he had completed the roofing of the garage building and installed the water line, and asked him when he desired to make settlement. On February 18, 1947, Mr. Brown, as attorney for Mr. Robinson, wrote a letter to Mr. Grubb stating that Mr. Robinson wanted his deposit refunded and that Robinson said that under no circumstances would he have bought the property had he known that possession could not be had and settlement made in time for him to take over on December 1st, and that he had hoped up to that time that something could be done. He also wrote: "He (Robinson) also claims that he talked with John about the property and told John that he could not go through with it because of the fact that he could not arrange to get possession by December 1st, and that at that time John tacitly agreed to call off the whole deal, but said nothing about returning the $2,000.00." Mr. Brown in that letter asked for the return of the deposit to Mr. Robinson and stated that the claim would be filed unless he heard from him shortly.

On March 8, 1947, Mr. Grubb wrote the following letter to Mr. Brown: "I appreciate the courtesies which you extended to John Malin and me at the conference

with Mr. Robinson in your office last Wednesday afternoon. I have asked John to give me a final answer which he had not done as yet so that I can write you with some finality. *John seems to be troubled over the fact that this is perhaps his last opportunity to go in business for himself in which case the building would not be for sale and further he is of the opinion that the offer should be on the same basis as the prior agreement.* However, John will see me over the weekend and I will write you the beginning of the week." Mr. Brown testified that at the conference referred to in Mr. Grubb's letter of March 8th, a new price of $27,000 was spoken of, but that Mr. Robinson insisted that Malin had not performed under the agreement and as he could not get the property when he was suppose to get it he was no longer interested. He further said that Mr. Malin made no offer to sell at $27,000. On April 21, 1947, Mr. Grubb wrote a letter to Mr. Brown stating that Mr. Malin was agreeable to convey the garage property to his client under the executed agreement of sale. On April 30, 1947, Mr. Brown wrote a letter to Mr. Grubb acknowledging receipt of his letter of April 21st, and stated that Mr. Robinson was not at all interested in his proposition and "There never has been a time when your client or his father was ever able to perform and give a deed to this property, and therefore, we shall expect Mr. Malin, as Executor, to pay back the deposit and will, within the next few days, take action to get the money."

On July 7, 1947, Mr. Brown, in a letter to Mr. Grubb stated that he had two talks with Mr. Robinson and that there was no hope of him forming a partnership with Mr. Malin. He suggested, however, that he had another party in mind who might be interested. Mr. Brown testified that the suggestion of a partnership came from Mr. Grubb or Mr. Malin.

Waiver of performance or the abandonment of a contract under seal may be proved by parol evidence. *Herzog v. Sawyer,* 61 Md. 344, 354; *Gibula v. Sause,* 173 Md. 87, 93, 194 A. 826; *Birckner v. Tilch,* 179 Md. 314, 322, 18

A. 2d 222; *Grauel v. Rohe,* 185 Md. 121, 127, 43 A. 2d 201.

We are of opinion that Mr. Robinson having abandoned the contract, the testimony in this case supported by the letter written by Mr. Grubb, attorney for the appellant, to Mr. Brown, attorney for Mr. Robinson, on March 8, 1947, in which he stated that his client was troubled over the fact that it was perhaps his last opportunity to go in business for himself, and if he did so the building would not be for sale, and further, that his client was of the opinion that the offer should be on the same basis as the prior agreement, is sufficient to sustain the contention that the appellant assented to the dissolution of the contract.

When a contract of sale has been mutually rescinded or abandoned the rights of the parties to be placed in *statu quo* are well recognized and the vendee is entitled to the return of the purchase money paid, even in the absence of an express promise. *Gunby v. Sluter,* 44 Md. 237, 250; *Gibula v. Sause, supra,* 173 Md. at page 92, 194 A. 826; *Loughran v. Ramsburg,* 174 Md. 181, 186, 197 A. 804; *Grauel v. Rohe, supra,* 185 Md. at page 127, 43 A. 2d 201. The judgment will therefore be affirmed.

*Judgment affirmed, with costs.*