FRALEY *v.* NULL, INC., ET AL.

[No. 507, September Term, 1965.]

*Decided December 7, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Kenneth J. Mackley,* with whom was *Paul Ottinger* on the brief, for appellant.

*Charles U. Price,* with whom was *Seymour B. Stern* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

Robert Fraley, appellant (plaintiff below), for over a year prior to the spring of 1963, had been working farm property in the Creagerstown area, Frederick County, Maryland, consisting of 260 acres which belonged to Eugene Miller. This farm had at one time belonged to the appellant's father, Austin Fraley, who lost it due to financial reverses.

Miller expressed a desire to sell the farm and in March of 1963, the father proposed to Delbert Null, a friend of many years standing and president of Null, Inc., appellee (defendant below), that appellee purchase the farm and enter into an agreement with his son, Robert Fraley, whereby the latter would work the property and eventually purchase it from appellee. Pursuant to this suggestion appellee acquired the farm property from Miller.

In late March or early April 1963 a conference was held in the office of appellee in Frederick at which Delbert Null, David Weinberg, a practicing attorney and half owner of appellee and Robert Fraley were present. The terms of a lease, with an option to purchase, were discussed. It was orally agreed between the parties that appellee, would lease the farm to Robert Fraley for a period of one year beginning April 10, 1963, and terminating April 9, 1964, at a monthly rental of $275, with an option to purchase the property for the sum of $40,000, at anytime within a nine month period dating from April 10, 1963. It was further understood that David Weinberg would reduce the terms to a formal written contract for execution by the parties.

There is a sharp conflict in the testimony, as to the understanding of the parties regarding the payment of rent. The appellant contends that the first payment was due June 10, 1963, and that the next payment was not due until the fall, after the crops were harvested and sold, at which time the rent would be brought up to date.

The appellee contended that there was no such understanding pointing out that there was no real money crop on the farm,

it being devoted primarily to the raising of beef cattle for which there is a market the year around and that rental payments were to be made in advance on the 10th of each month starting with the 10th day of April 1963.

There was also a conflict in the testimony as to when the lease was to have been ready for execution. Robert Fraley called the appellee's office two days after the meeting at which the oral agreement had been reached thinking that it would have been prepared by that time and testified that he had made repeated telephone calls and several visits to the appellee's office, requesting a copy of the agreement, that his mother had called and a Mrs. Fout, who worked for his father, visited the appellee's office in an effort to obtain the lease for him. David Weinberg countered with testimony, that the lease was ready May 22, 1963, but that the Fraleys made no effort to execute it. In any event the lease-option agreement was never signed by either party.

Robert Fraley made his first monthly payment of rent on June 15, 1963. The summer months went by without any further payment and on September 12, 1963, Delbert Null wrote a letter to the appellant's father advising him that the rent was five months in arrears and that if this rent due and owing was not paid within a two week period, "I will consider the agreement entered into with you with regards to giving you an option to purchase within a certain period of time and a first right of refusal thereafter null and void." The rent was not forthcoming in two weeks and appellee laid a distraint for rent on the property and on October 10, 1963, the appellant paid $1,375.00 rent in arrears. It should be noted that the appellant had been inducted into military service on July 10, 1963 and was released December 10, 1963. While in the army he hired Robert Ogle to conduct the farming operations. There was evidence to the effect that some repairs were made to the hay barracks, the stone barn and that hog pens were built, however, there is nothing in the record that would indicate that any substantial improvements were made on the property during its possession by the appellant and that these acts constituted no more than usual farm husbandry.

There was evidence that in September or October of 1963,

appellee entered into a contract of sale for the farm with a Victor Leisner and that Leisner after learning of appellant's interest in the farm requested cancellation of the contract, with which appellee concurred. Also on November 25, 1963, appellee, entered into a contract with Austin Ward to sell the farm to him for $51,000. On November 27, 1963, appellant had his attorney write David Weinberg a letter delineating his understanding of the transaction between the parties and listing the alleged breaches of contract on the part of the appellee, stating that he had been instructed by appellant to file suit for specific performance, or in the event the property had been sold, to collect damages by way of claiming all consideration received in excess of $40,000. In early December 1963, a meeting was held in the office of the appellee, at which the appellant, two attorneys representing him, his mother, David Weinberg and Delbert Null, were all in attendance. At this meeting those representing the appellant, took the position that appellant's contract with appellee was canceled, however, that appellee would also deem the contract with Austin Ward canceled, and that the appellant would have the opportunity to purchase the property for $40,000 on or before January 9, 1964, provided he also paid an insurance bill in the amount of $1,300 owed to the appellee by the appellant's father, which bill had no connection whatsoever with the farm property or its operation. On January 9, 1964 the appellant went to the office of appellee and told David Weinberg he was going to receive financial assistance from a well-to-do neighbor farmer, William R. Seiss, who had agreed to advance the necessary funds and take a purchase money mortgage at 6% as security. The closing was set for that evening January 9, 1964 at 9 p.m. David Weinberg, Delbert Null and a notary public were waiting in the office of the appellee, when, shortly before 9 p.m., appellant's mother called and said her son could not be present that night.

The last payment of rent was made on November 26, 1963; in February 1964 appellee instituted eviction proceedings against appellant for failure to pay rent and he was evicted by court order with judgment entered against him for unpaid rent in the sum of $1,100.

On January 28, 1964, appellee entered into a contract for sale

of the property to Austin Ward for $51,000, which was consummated on April 24, 1964. The same day appellant filed this suit for specific performance of his purported option with the appellee for the purchase of the farm. The learned Chancellor in the court below dismissed the bill of complaint with the proviso that the judgment obtained by appellee against appellant, in the sum of $1,100 for rent in arrears, be marked "settled and off," as a crop of rye had been planted by appellant, which he would have had the right to harvest and the amount of the judgment was approximately the value of the crop.

The question for this Court to decide is whether or not the Chancellor in the lower court erred in refusing to grant to the appellant a decree for specific performance of the option agreement to purchase the farm.

There were several reasons successfully urged by the appellee, in the court below, as to why specific performance should not be decreed. However, in order to affirm the Chancellor in his opinion, we feel that we need go no further than the application of the fourth section of the Statute of Frauds, 2 *Alexander's British Statutes, Coe's Ed.,* 689, 690, to the present case; since it is settled law in Maryland that the option to purchase provision contained in a lease of real estate, comes within the purview of the Statute. *Bank v. Hurst Estate,* 187 Md. 333, 50 A. 2d 133 (1946).

The contract containing the lease agreement and option to purchase, after it was reduced to writing by David Weinberg, was never executed or signed by any of the parties to the transaction. Thus it is obvious that no formal written contract ever existed. The fourth section of the Statute of Frauds provides:

> "no Action shall be brought * * * to charge any Person * * * upon any Contract or Sale of Lands, Tenements, or Hereditaments, or any Interest in or concerning them; * * * unless the Agreement upon which such Action shall be brought, or some *Memorandum* or Note thereof shall be in Writing, and signed by the Party to be charged therewith, * * *."
> 2 *Alexander's British Statutes, supra.*

Since, as we have already stated no formal written contract ex-

isted between the parties, the letter of September 12, 1963 becomes important, as it is alleged by appellant that it is a written memorandum sufficient to satisfy the Statute. However, before the question of the sufficiency of the letter of September 12 is reached, there is a more fundamental issue to be decided by this Court; and that is whether or not any understanding creating more than a month to month tenancy existed between the parties. It is axiomatic that there must have been some pre-existing oral contract between them, encompassing the year's lease with the option to purchase, before the letter of September 12 can have any legal effect.

We are of the opinion that an oral agreement, involving the elements set forth in the written contract prepared by David Weinberg, never came to fruition. Although, the lease option agreement drafted by David Weinberg is precise enough on its face to provide the essentials of a valid oral contract, yet, the appellant contends that incorporated within it was a provision to which he had never agreed and this was the material provision as to the time and manner in which the rent was to be paid. *First Nat. Bank of Albuquerque v. Tanney,* 178 P. 2d 581, 582 (N. M. 1947).

Reviewing the testimony of appellant, Delbert Null and David Weinberg, all of whom were in attendance at the negotiations in appellee's office when the terms of the lease-option agreement were discussed and taking into consideration their actions subsequent thereto, it is clear that there never had been a *concursus ad idem* regarding the method of paying rent.

The appellant voiced a deep conviction that after the initial payment of the first month's rent there was to be no further payment due until after he had harvested and sold his crops in the fall. The Chancellor had the opportunity to hear and observe all of the witnesses; it is apparent he placed greater credence in the appellee's version and as was said in *Post v. Gillespie,* 219 Md. 378, 386, 149 A. 2d 391, 396 (1959) : "acceptance of an offer altering the method of performance is a conditional or qualified acceptance and amounts to a counteroffer * * *." We, therefore, conclude that an oral contract never existed between the parties.

Once we affirm the proposition that an oral contract, cover-

ing a year to year lease with option to purchase, never existed, the question of the legal effect of the letter of Delbert Null, president of the appellee, to the father, Austin Fraley, September 12, 1963, becomes academic. However, if *arguendo,* we were to assume that an oral contract was in existence, it is doubtful that the wording of the letter of September 12 was sufficient to meet the requirements of a written memorandum necessary to satisfy the Statute of Frauds.[1]

The ambiguous language of the letter may well justify the conclusion that appellee was referring to a future option, when it stated: "I will consider the agreement entered into with you with regards to *giving you an option to purchase* * * * null and void." (Emphasis supplied.)

A written memorandum to satisfy the statute may be brief and informal in form but it must not be ambiguous. *Silverman v. Kogok, Adm'r,* 239 Md. 71, 77, 210 A. 2d 375, 378-79 (1965); *Vary v. Parkwood Homes, Inc.,* 199 Md. 411, 417, 86 A. 2d 727, 731 (1952); *Harris v. Kirshner,* 194 Md. 139, 144, 70 A. 2d 47, 49 (1949); *Smith v. Biddle,* 188 Md. 315, 321, 52 A. 2d 473, 475, (1947).

The need for an existing oral contract applies with equal force when the barring of the Statute is sought by coupling the oral contract with possession, improvements to the property or partial performance. Again, since we find no existing oral contract, any further acts done by the appellant are immaterial to the issue. However, even had an oral contract covering the year's lease with an option to purchase existed, nothing was

---

1. The requirements that a memorandum must meet in order to satisfy the Statute were succinctly stated by this Court in Forsyth v. Brillhart, 216 Md. 437, 440, 140 A. 2d 904, 906-07 (1958): "a memorandum, in order to make enforceable a contract within the Statute of Frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certainty, (1) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and (2) the land, goods or other subject-matter to which the contract relates, and (3) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made."

done cognizable in equity which betters the position of the appellant. The appellant was in possession of the farm for over a year prior to opening negotiations with appellee. No substantial improvements were made on the farm, no additional payments were advanced as rent, which was allowed to become in arrears. As was said in *Bank v. Hurst Estate, supra,* at 338, 50 A. 2d 135: "No question of part performance is presented. Plaintiff's possession was referable only to his tenancy, not to his unperformed option to purchase. *Semmes v. Worthington,* 38 Md. 298."

It also becomes unnecessary to reach any conclusion regarding the ability of appellant to perform his part of the option agreement, had one existed. The court below was of the opinion "the plaintiff could never have financed the purchase of the farm in spite of the testimony of Mr. Seiss."

The attorneys for both parties, in either their brief or in argument before this Court recognized that Rule 886 a, applies to this case and that it is well established that a decree or order of a lower court sitting without a jury will not be set aside on the evidence unless clearly erroneous and we find no such error here. *August Wohlmuther, et ux. v. Mt. Airy Plumbing & Heating, Inc., et al.,* 244 Md. 321, 223 A. 2d 562.

*Order affirmed, with costs.*