46 F.3d 1125
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re: Paul J. MRAZ, Appellant,
James E. MRAZ; Heidi Pfisterer Mraz, his wife, Plaintiffs,
v.
Pauline M. BRIGHT; Sommers Enterprises, Incorporated;
Gordon Schmidt; Coldwell Banker Residential
Affiliates, Incorporated; Aaron
Chicovsky; William Ross
Pederson, Defendants-Appellees,
and John Doe, Counter-Offerer, Defendant.
 No. 94-1255.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 13, 1994.
Decided Feb. 1, 1995.
 
 Paul J. Mraz, appellant pro se. Aaron Chicovsky, William Ross Pederson, Appellees. Richard Eli Jackson, Elkton, MD; Thomas Leonard Crowe, McGuire, Woods, Battle & Booth, Baltimore, MD, for appellees.
 Before WILKINSON and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 
 OPINION
 PER CURIAM
 
 1
 Appellant appeals from the district court's order imposing sanctions pursuant to Fed.R.Civ.P. 11. Finding no abuse of discretion, we affirm.
 
 
 2
 Pauline M. Bright listed a parcel of real property with the Realtors[1] under an "Exclusive Right to Sell" agency agreement. The listing price was $89,500. After viewing the property, Plaintiffs were given a copy of a Notice of Agency Relationship form explaining that the broker and salesperson were agents of the seller. The form also stated that certain statutory duties were owed to prospective purchasers, including the duties to treat prospective purchasers fairly and to promptly present offers to the seller.
 
 
 3
 Plaintiffs initially offered to purchase the property for less than the asking price. Their second offer increased the price term to the listing price. According to Plaintiffs, the offers included a number of contingencies based on the Realtors' representations that Bright wanted these terms included. Unable to contact Bright, the Realtors transmitted the offer to Bright's son-in-law the following morning.
 
 
 4
 The Realtors showed the property to other prospective purchasers, who offered to purchase the property for an amount greater than the listing price. The Realtors transmitted this offer to Bright's son-in-law on the same date as Plaintiffs' offer. Bright accepted this offer.
 
 
 5
 Plaintiffs, by their counsel, Paul J. Mraz, filed a complaint in the district court alleging that Bright breached the contract with Plaintiffs for the sale of the house, that the Realtors breached their contract with the Plaintiffs, that the Realtors were liable for intentional misrepresentation, and that the ultimate purchasers tortiously interfered with the contract between Bright and the Plaintiffs. Following the granting of summary judgment for all Defendants, the court granted Bright's motion for sanctions and, on its own initiative, imposed sanctions against Mraz in favor all of the Defendants. Mraz appealed.
 
 
 6
 Plaintiffs' claims for specific performance, breach of contract by Bright, and tortious interference by the ultimate purchasers are premised upon the existence of a contract between Plaintiffs and Bright for the purchase of the property. However, contrary to Plaintiffs' contention, Bright's listing of the property under an "exclusive right to sell" agreement does not constitute an offer to sell the property. See Blondell v. Turover, 72 A.2d 697, 699 (Md.1950); Rofra, Inc. v. Board of Educ., 346 A.2d 458, 459 (Md. Ct. Spec.App.1975), aff'd, 358 A.2d 562 (Md.1976).[2] Mraz also relies upon the Realtors' alleged representations to the Plaintiffs that they had authority to negotiate and bind Bright to a contract. However in light of the clear authority to the contrary, these undocumented, oral representations are insufficient to convert a mere listing agreement into an offer of sale. See Blondell, 72 A.2d at 699.
 
 
 7
 Moreover, if Bright's listing of the property constituted an offer to sell, Plaintiffs initial response offering $9,000 less than the listing price amounted to a counteroffer, and no contract was formed. Fraley v. Null, Inc., 224 A.2d 448, 452 (Md.1966) (quoting Post v. Gillespie, 149 A.2d 391, 396 (Md.1959)). Thus, Plaintiffs' second submission, offering to pay the listing price, amounted to an offer to purchase the property, empowering Bright to accept or reject the offer. Fraley, 224 A.2d at 452. Therefore, no contract was created by the Plaintiffs' submission of the offer to purchase the property at the listed price.
 
 
 8
 Further, had an offer been made and properly accepted, the resulting contract would be unenforceable because it was not evidenced by a writing sufficient to satisfy the statute of frauds. See Mann v. White Marsh Properties, Inc., 581 A.2d 819, 821 (Md.1990). Mraz contends that the statute of frauds is satisfied by combining the "exclusive right to sell agreement" which contained Bright's signature and the Plaintiffs' offer to purchase the property, which contained the essential terms of the contract. However, the listing agreement does not grant the broker any authority beyond that of finding a purchaser to submit an offer, which the owner may then accept or reject. See MacKnight v. Pansey, 412 A.2d 236, 239 (R.I.1980); Gill v. American Sec. Corp., 209 A.2d 629, 631 n. 2 (D.C.1965). The listing agreement cannot be combined with a prospective purchaser's offer to create a binding contract enforceable against the seller. Because the statute of frauds is not satisfied by the combination of the documents proffered by Mraz, even if there were a contract, the contract is unenforceable.
 
 
 9
 We agree with the district court that there clearly was no contract between Plaintiffs and Bright for the purchase of the property. We also find no abuse of discretion in the court's imposition of sanctions for these claims which are not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Fed.R.Civ.P. 11; see Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400-01 (1990); Fahrenz v. Meadow Farm Partnership, 850 F.2d 207, 210 (4th Cir.1988). We affirm the imposition of sanctions on these counts.
 
 
 10
 With regard to the Plaintiffs' intentional misrepresentation claim, the district court imposed sanctions after finding that it was not well grounded in fact. See Martens Chevrolet, Inc. v. Seney, 439 A.2d 534, 537 (Md.1982); Deleon Enters., Inc. v. Zaino, 608 A.2d 828, 837 (Md. Ct. Spec.App.), cert. denied, 614 A.2d 84 (Md.1992). Mraz contends that his investigation, in the limited time he had, uncovered sufficient information from which he could objectively believe that Plaintiffs may prevail on the claim of intentional misrepresentation. We find that the district court did not abuse its discretion in finding that Mraz failed to set forth a factual basis for the claim of intentional misrepresentation. See Cooter, 496 U.S. at 400-01; Fahrenz, 850 F.2d at 210. Notably, after discovery which did not uncover a sufficient factual basis for this claim, Mraz continued to press the claim for intentional misrepresentation. See Fed.R.Civ.P. 11(b)(3), advisory committee's notes 1993 Amendment.
 
 
 11
 Plaintiffs also alleged that the Realtors breached the contract between the Plaintiffs and the Realtors. Mraz contends that the contract arose from the "notice of agency relationship agreement" which the Realtors presented to Plaintiffs as required by state law. Mraz argues that the Realtors' inclusion of the duties owed to Plaintiffs went beyond the required disclosure and created contractual duties owed to the Plaintiffs. We agree with the district court that the disclosure of the agency relationship between the Realtors and the Seller could not create a contract between the Realtors and a prospective purchaser, and if a contract were created, the Realtors' alleged breach of these duties resulted in, at best, a cause of action for negligence, not for breach of contract as alleged. Finding no breach of the duties to Plaintiff, no support in Maryland law for this claim, and in light of Mraz's concession that he "never argued for an extension, modification, or reversal of existing law," the court did not abuse its discretion in imposing Rule 11 sanctions.
 
 
 12
 Mraz additionally argues that the Defendants waived their right to move for sanctions because they did not move to dismiss the complaint or assert that the complaint was frivolous any time prior to the summary judgment motions filed over one year after the complaint was filed. "Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely. In other circumstances, it should not be served until the other party has had a reasonable opportunity for discovery." Fed.R.Civ.P. 11, advisory committee's notes 1993 Amendment. This case-by-case determination is best left to the discretion of the district court. See id.; Dubisky v. Owens, 849 F.2d 1034, 1037 (7th Cir.1988). The failure of the Defendants to move for Rule 11 sanctions at an earlier time does not preclude the district court, in its discretion, from imposing sanctions after the close of the discovery period.
 
 
 13
 Finding no abuse of discretion in the district court's imposition of Rule 11 sanctions upon Plaintiffs' attorney, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 The Realtors are Sommers Enterprises, Inc., the real estate brokerage firm through which the seller listed the property, Gordon Schmidt, the listing agent associated with Sommers, and Coldwell Banker Residential Affiliates, the franchisor of the listing broker
 
 
 [2]
 Mraz contends that in some circumstances, a real estate agent can enter into contracts for the seller. See Hobdey v. Wilkinson, 94 A.2d 625 (Md.1953) (owner and broker formed joint venture to develop and sell residential property). However, absent the unusual facts presented in Hobdey, a real estate broker cannot execute a contract binding upon the owner, and the mere listing of property with a broker does not create the power of acceptance in prospective purchasers. Blondell, 72 A.2d at 699