EDWIN W. DUVALL AND
   PETER SAUSSAR
       vs.            July Term, 1848.
JOSEPH J. SPEED AND
JOSIAS PENNINGTON.

[TRUSTEES UNDER THE INSOLVENT LAWS—SALES BY—JUDGMENT—LIEN OF.]

A TRUSTEE selling under a decree of the Court of Chancery, as a general rule, sells the title of the parties to the suit, and nothing more ; and though a purchaser, discovering a defect in his title at the proper time, may be relieved from his purchase by asking for a rescision of the sale, he cannot be permitted, whilst holding on to his purchase, to insist upon having his title perfected by the application of the proceeds of sale, to the extinguishment of the claims of incumbrances, not parties to the suit.

A judgment creditor not a party to the suit, is not bound to seek payment out of the proceeds of sales in the hands of the trustee, but may prosecute his lien against the property, after its conveyance to the purchaser.

The fact, that the trustee of an insolvent debtor was a party to the suit, does not dispense with the necessity of making the creditors themselves parties.

[At the October term, 1840, of Anne Arundel County Court, a judgment was rendered in favor of James Dunn and John Sloan, for the use of J. J. Speed and J. Pennington, as trustees and receivers, against one Vachel Sevier, for the sum of $300, with interest thereon, from the 14th December, 1840, the day on which the judgment was signed, and costs ; upon this judgment a writ of fieri facias was sued out, and duly returned by the sheriff at April term, 1841, as partially satisfied and "nulla bona" the residue.

On the 17th May, 1843, Vachel Sevier and wife, executed a mortgage of certain houses and lots, in the city of Annapolis, of which he was seized in fee at the time of the rendition of the above judgment, together with other real property, in favor of one John T. Hodges, to secure to him the payment of a large sum of money, and on the 13th November, 1844, the said Hodges, filed in the High Court of Chancery his bill of complaint, against Sevier and wife, praying a sale of the mortgaged premises for the payment of his debt. Before the defendants answered this bill, viz. on the 22d October, 1845, Sevier ap-

plied for the benefit of the insolvent laws, and one Gabriel H. Duvall was on that day appointed trustee, for the benefit of his creditors ; gave bond as such, and received a deed from the said Sevier : although no property whatever was returned in the schedule of said Sevier at the time of his application, and none, in point of fact, ever came into the possession of his trustee. On the 16th of September, 1846, John T. Hodges filed an amended bill against Sevier and wife, and the said Duvall, alleging, "that subsequent to the date of the mortgage to him, the said Sevier had conveyed, or assigned, all his remaining interest or equity of redemption in the said mortgaged premises, to the said Duvall, as his trustee, under the insolvent laws, the benefit of which the said Sevier then proposed to take, and praying such relief against the said defendants, as was prayed in his original bill, and the answers having been filed admitting the facts as stated, the cause was so proceeded in, that on the 18th January, 1847, a decree was passed for the sale of the mortgaged premises, Duvall, the trustee, uniting with the solicitor, for the said Hodges, in a request that the same might be signed. On the 15th February, 1847, the complainants, Duvall and Saussar, purchased from the trustee appointed by the said decree, the houses and lots in the city of Annapolis, mentioned in the said mortgage, complied with the terms of sale, and entered into possession thereof.

It having become necessary, from lapse of time, the defendants, Speed and Pennington, caused a scire facias to be issued on their judgment, against Vachel Sevier, the defendant therein, returnable to October term, 1845, of Anne Arundel County Court, and while proceedings upon their scire facias were still pending—before a fiat was obtained thereon, and before the final ratification of the sales made, as aforesaid, to the said Duvall and Saussar, viz. on the 29th April, 1847, filed in the case of Hodges vs. Sevier and others, their petition, praying, among other things, that their judgment might be satisfied, out of the purchase money, in the hands of the trustee, appointed by the decree in the said cause, before the application of any portion thereof, to the mortgage debt of the complainant,

Hodges, upon the ground, that their judgment was a prior lien upon the real estate mortgaged to said Hodges; which petition was, after argument, dismissed on the 5th June, 1847, because "proceedings were still pending to revive the judgment, and until a fiat was obtained, it must be presumed to have been executed or satisfied." On the 28th June, 1847, the sales were finally ratified, no objections having been filed, and on the 30th July, 1847, an order passed, confirming an auditor's report, by which the entire net proceeds, were applied to the payment in part of the mortgage debt of the complainant, Hodges.

At the October term, 1847, of Anne Arundel County Court, a fiat was duly entered upon the scire facias, which had issued to revive the judgment in favor of Speed and Pennington, subject to Sevier's discharge under the insolvent laws, and an execution of fieri facias, was subsequently sued out upon the judgment so revived, and duly levied upon the houses and lots in the city of Annapolis, which had been purchased by the complainants, Duvall and Saussar.

After this execution had been levied, Duvall and Saussar, on the 15th of January, 1848, filed, in the case of Hodges vs. Sevier and others, a petition, praying, that the judgment in favor of Speed and Pennington, then about to be enforced against the property purchased by them, might be paid out of the funds, in the hands of the trustee who made the sales, or that they might be authorized to pay it, and have the amount so paid, discounted from the purchase money thereafter to become due from them. To this petition, an answer was filed by Hodges, the mortgagee, objecting to the relief sought, upon the ground, that the petitioners purchased without any warranty of title, and insisting, that if the court could interfere in behalf of the purchasers, it should do so by rescinding the sale, and as the property sold very low, giving him an opportunity to secure a larger portion, or the whole of his debt. The matter of this petition, was argued by counsel, and on the 6th March, 1848, an order was passed dismissing the petition, and an opinion filed by Johnson, Chancellor, from which the following extracts are taken:

"The answer of Hodges, the mortgagee, to this petition, states, among other reasons in opposition to its prayer, that the property purchased by the petitioner, sold very low, and that, he believes, it could now be sold for more than will satisfy the purchase money, and the amount of the judgment of Speed and Pennington, and, that if this court is disposed to interfere in any way, it should be by setting aside the sale, and putting the property again in the market. But this form of relief, it is understood, the purchasers are opposed to."

"The property was sold to satisfy a mortgage, dated on the 17th May, 1843, under a decree passed upon a bill filed by the mortgagee against the mortgagors, for a foreclosure and sale ; and the question is, whether a purchaser at such a sale has a right to insist that all prior incumbrances should be removed, so that he shall receive a clear title, and further, that the right so to insist, continues after the sale has been finally ratified, and the proceeds actually appropriated to the payment of the mortgage debt, by an order of the court."

After an examination of the authorities, cited in argument : *Glenn* vs. *Clapp*, 11 *Gill & Johns.*, 10 ; *Brooke* vs. *Brooke and others*, 12 *Gill & Johns.*, 306 ; *Bell* vs. *Brown's adm'r*, 3 *Harris & Johns.*, 484 ; *Ellicott* vs. *Ellicott et al.*, 6 *Gill & Johns.*, 35, to show that they did not prevent the strict application of the rule, *caveat emptor*, in the present case, "the sale having been conducted by the trustee in the ordinary way, without any stipulation in regard to the title, other than that which resulted from the decree under which he acted," the Chancellor proceeds :]

THE CHANCELLOR :

If the doctrine contended for by the solicitor for the petitioners be sound, and the court is bound to disencumber the title of all liens, it might sometimes find itself in an embarrassing situation, and unable to do what the purchaser has a right to require. In the case of Ellicott vs. Ellicott, already referred to, the court said, the mortgagees who were not made parties to the bill, "were not bound to come in and seek payment under

the proceedings in the Chancery Court, for the sale of the deceased's real estate, but might cling to the property specifically pledged for the payment of their debt, and hold on until they were fully paid, both principal and interest." But if the court is bound under all circumstances, when the money is within its control, to clear the title, it must have power to bring in the incumbrancers, whether they are willing or not, and thus deprive them of the right to stand out, and to cling to the property, which, as has been shown, the Court of Appeals say, they are entitled to do, and thus it might happen that the court would be under an obligation to do that which it could not do, without trenching upon the recognised rights of parties, not parties to the cause when the decree passed. Chancellor Hanson, in the case of *Miller* vs. *Baker*, reported in 1 *Bland*, 147, in the note, admits that the vendor of the estate sold under the decree in that case, could not be compelled to receive his money, unless he exhibited his claim, or was called to answer a bill or petition for a conveyance, and of course concedes, that the court had no power by any proceeding in that case, to clear the title.

There is, moreover, another very strong objection to the prayer of this petition.

When the order of the 5th June was passed, dismissing the petition of Speed and Pennington, asking for the payment of this same judgment, out of the proceeds of the sales of the property in this case, the trustee's report of the sales had not been ratified, and of course no appropriation had been made of the purchase money.

But since then, to wit, on the 28th of the same month, the final order of ratification passed, and on the 30th July, following, the Auditor's report, appropriating the net proceeds of the sale to the payment of the claim of the mortgagee, in part, leaving still a considerable sum due him, was also ratified, and the money directed to be so applied. It was not until the 15th of January last, nearly six months after the ratification of the report of the auditor, giving this direction to the money, that the present petition was filed, which seeks, so far as the pay-

20*

ment of the judgment is concerned, to reverse that order.   This strikes me as presenting a very serious difficulty, though as I am of opinion, that upon other grounds the prayer of this petition cannot be granted, I do not now propose to express a decided opinion upon it.

It was suggested in the course of the argument, that the insolvency of Sevier, the mortgagor, and the appointment of a trustee for the benefit of his creditors, might have some influence upon these proceedings.   But as this trustee was made a party to the bill by amendment, and consented to a decree, and a sale has actually been made and reported and finally ratified by the court, I cannot think the proceedings can now be questioned upon this ground.

An order will be passed dismissing the petition.

—

[On the 11th of April, 1848, Duvall and Saussar filed their bill, praying an injunction against Speed and Pennington, who were proceeding to enforce their judgment against the property purchased by complainants, upon the ground that they purchased free, clear and discharged of all claim of the parties to the suit of Hodges vs. Sevier and others—that Duvall, the trustee, was a party thereto, and, as such, represented the judgment creditors, who could not, therefore, proceed again to sell property which had already been sold by their agent, the said trustee ; that all the interest of Sevier was sold, and the proceeds, if any, were due and payable to the trustee, Duvall, for the benefit of his creditors, and against this fund, alone, in the hands of the trustee, could the judgment creditors proceed, according to the acts of assembly in such case made and provided ; and, finally, that no proceeding had been instituted against the trustee under the insolvent laws, nor had any claim been exhibited to him on account of the judgment aforesaid.   Upon this bill, the Chancellor, Johnson, ordered an injunction as prayed, and the answer having been filed, setting forth all the facts as detailed in this report, the cause came on to be heard, upon bill and answer, on the motion to dissolve the injunction.

Various questions were raised and argued at the hearing upon

this motion, but the grounds upon which the Chancellor decided the cause, will appear from the following extracts from his opinion, filed on the 27th July, 1848, viz.]

THE CHANCELLOR:

When the application for the injunction was made, I entertained very serious doubts as to the propriety of granting it, but not seeing that any material injury could result to the judgment creditor, from a temporary suspension of his right to enforce it by execution, and being willing to hear the views of counsel before making up a definite judgment upon the subject, I thought it best to order the injunction, that a more careful consideration might be given the case when the motion to dissolve should be made.

Upon the petition of these complainants, Duvall and Saussar, filed in the case of Hodges vs. Sevier and wife, the proceedings in which case are made parts of this, I had occasion to examine the question of the extent and character of the title which a purchaser acquired from a trustee selling under a decree of this court, and the result was, that "as a general rule, the title of the parties to the suit and nothing more, was sold;" and, that though a purchaser discovering a defect in his title, at the proper time, might be relieved from his purchase, by asking for a rescision of the sale, he could not be permitted, whilst holding on to his purchase, to insist upon having his title perfected by the application of the proceeds of sale to the extinguishment of the claims of incumbrancers not parties to the suit.

And the petition in that case was dismissed upon the ground, that these defendants, the judgment creditors, were not parties, and their lien, consequently, not extinguished. This decision was made, too, with full knowledge and due reflection upon the fact, that Duvall, the trustee of the insolvent, was a party to the suit, and had consented to the decree ; and, consequently, it follows, that his presence as a party was not considered as dispensing with the presence of the incumbrancers themselves. Or, in other words, that the trustee was not to be regard-

ed as their representative. But, for this conclusion, the prayer of that petition must have been granted.

That this judgment was a lien at the time of the execution of the mortgage to Hodges is incontestibly settled by authority. *Murphy* vs. *Cord*, 12 *Gill & Johns.*, 182; *Rankin and Schatzell* vs. *Scott*, 12 *Wheat.*, 177.

And, it is equally indisputable, that if the judgment creditor was not a party to the suit, he was not bound to seek payment out of the proceeds of sales in the hands of the trustee, but might prosecute his lien against the property, after its conveyance to the purchaser. *Brooks* vs. *Brooke et al.*, 12 *Gill & Johns.*, 318.

These propositions are not understood to be denied, but it is insisted, with much force, that notwithstanding the former decision of this court upon the petition of the complainants in Hodges' case, and which, as has been explained, could only have been pronounced upon the hypothesis, that these judgment creditors were not to be regarded in any sense as parties to, and bound by, the decree in that suit; this court will now upon this bill declare, that they were parties, and bound by the decree, because the insolvent trustee was a party and consented to it.

The Court of Appeals, in the case of *Alexander* vs. *Ghiselin* and others, decided at December term last, that upon the true construction of the seventh section of the act of 1805, chapter 110, the trustee of an insolvent debtor, whose property had been taken in execution before his application for the benefit of the insolvent laws, is, nevertheless, to make the sales applying the proceeds to the satisfaction of the liens; that, upon such application, the property of the petitioning debtor, no matter how incumbered, and though in *custodia legis*, is to be taken possession of and sold by the trustee, in order that there may be but one administration of the estate. And, it is insisted, that the principle of this decision extends to the present case; and, that the sale made under the decree of this court, upon the bill filed by Hodges, the trustee of the insolvent debtor being a party thereto and assenting to the decree, produces the same legal consequences as if the sale had been made by the

trustee of the insolvent, himself. Or, in other words, because such trustee sells free of incumbrances, as he must do, in order to accomplish the purposes of the insolvent system, that the same result must follow when a sale is made by a chancery trustee, in a case to which the trustee in insolvency is a party."

But can this be so ? If it is, then the fund raised by the sale in Hodges' case, should have been handed over to the insolvent trustee, to be administered in insolvency by him, and its distribution by this court was improper.

The insolvent system, as contained in the act of 1805 and its supplements, is a system to be administered by the courts of law, and with which this court has nothing to do ; the County Court is to appoint the trustee—to order the sale—to fix the commission—and to limit the time for the creditors to bring in and declare their claims.

Now, if the trustee appointed by this court can by any consent of the trustee in insolvency, be so far substituted for him, as that a sale made by the former, shall pass to the purchaser an unincumbered title, to the same extent, as if made by the latter ; and, if this court, by reason of such assent, or presence of the insolvent's trustee, as a party to the cause, can administer the insolvent system, it should do so, as the County Court is required to do by the act of assembly.

The creditors should be called in upon notice, as provided for by the 12th section of the act; for surely nothing could be more unjust, than that their rights should be concluded, without an opportunity of asserting them. If the argument of the counsel of the complainant is sound, that the insolvent trustee represents all the creditors of the insolvent, then it follows, not only that these judgment creditors are concluded, but all the other creditors of the insolvent are in the same situation, though they may have had no notice whatever of the existence of this chancery suit, and of course no opportunity of presenting their claims. Now, suppose it should turn out, that there is some other creditor of Sevier, having a lien older than Hodges' mortgage, who never, as these creditors did, came in and asked to be paid out of this fund, and who in point of fact, had no no-

tice whatever of the proceedings, would it not be most unjust to turn him away by saying, that though not here in person, you were by representative, and you must look to him. And then, when he applied to him and complained, that he had suffered the fund to be distributed, without regard to his rights, the answer would be, the fund has been distributed by a court of competent jurisdiction, for which the insolvent trustee could not be held responsible.

I cannot bring myself to think, that the case of Alexander vs. Ghiselin can be carried to an extent which must be productive of such injurious consequences.

The bill in that case was filed for the purpose of having the estate administered in insolvency. But in Hodges' case, it was the bill of a mortgagee, asking for the enforcement of his specific lien, and the trustee of the insolvent was brought in, because the equity of redemption had devolved upon him by operation of the insolvent laws.

The construction contended for by the complainants' counsel would not only make the Court of Chancery the tribunal for the administration of the insolvent system, but as several bills for the enforcement of several mortgages, (if the insolvent had executed more than one,) might be filed in the different equity courts of the state, that singleness of administration, which the system aimed at, and which the Court of Appeals considered so important in Alexander's case, would be entirely defeated, and instead of simplicity and uniformity, the utmost confusion would be the unavoidable result.

But it is said, the judgment of the defendants has been improperly revived, because Duvall, the insolvent trustee, was not a party to the *scire facias*, and that, therefore, this court ought not to dissolve the injunction.

I do not deem it necessary to express an opinion upon this point, thinking it more properly belongs to the courts of law. If the judgment has been improperly revived, and is a nullity, as is contended, then no title will pass·to the party who may purchase under an execution issued upon it, and the complainants will not be injured. But surely it would be improper in

this court to prejudge that question, it being a question of law, or to interfere in any way with the rights of the parties under the judgment, unless some sufficient equitable ground was presented, which I think has not been done.

The injunction, therefore, must be dissolved.

[No appeal was taken from this order.]