TALBERT ET UX. *v.* SEEK ET AL.

[No. 158, October Term, 1955.]

*Decided May 3, 1956.*

Submitted to Brune, C. J., and Delaplaine, Collins, Henderson and Hammond, JJ.

*John W. Middleton* and *Robert L. Edwards,* on the brief for appellants.

*W. Carroll Beatty* and *David A. McNamee,* on the brief for appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Prince George's County, denying relief sought by Lewis J. Talbert and Kathleen D. Talbert, his wife, (the Talberts), appellants, in connection with a sale of real estate.

David O. Seek, Sr., owner of an undivided fourteen-fifteenths interest in a tract of land in Prince George's County, known as Lots 7, 8 and 9 in B subdivision of Green Hill Park, died intestate on or about January 1, 1955, survived by the following heirs-at-law: Ernest J. Seek, David O. Seek, Jr., Margaret Evatt, Bessie Taylor, Clara Taylor, Violet Peterson, Annie Taylor, Richard J. Seek, Louise Gordon, and his granddaughter, Elizabeth Camilla Robinson. The remaining one-fifteenth interest in this land was owned by his granddaughter, Elizabeth Camilla Robinson.

After the death of the said David O. Seek, Sr., some of his heirs-at-law negotiated with the appellants, the Talberts, for the sale of the property above described, the Talberts having been occupying as tenants the garage building there located for a period of time, maintaining a cabinet repair shop there. As a result of these negotiations the Talberts paid to W. Carroll Beatty, Esquire, who had been consulted by and represented a number of the heirs of David O. Seek, Sr., the sum of $500.00. This sum was to be held by the said attorney as the proposed escrow agent and attorney for the heirs of the decedent, David O. Seek, Sr.

On January 25, 1955, a contract was entered into by the Talberts, W. Carroll Beatty, escrow agent and attorney for the heirs-at-law of David O. Seek, Sr., deceased, and all of the heirs-at-law of David O. Seek, Sr., including his granddaughter, Elizabeth Camilla Robinson, all *sui juris,* for the sale of the aforesaid property. The $500.00 paid to Mr. Beatty

was set out as the down payment on the contract. The total purchase price was to be $8,200.00. It was further provided therein: "This contract is further subject to ratification of the Court as herein provided. IT IS UNDERSTOOD AND AGREED by and between the parties hereto that passing of final title to the above described property shall be subject to Notice to Creditors either in Administration proceedings or partition suit to be filed and if the latter, this contract is further subject to ratification by the Circuit Court for Prince George's County, Maryland, the property hereby conveyed being owned by the heirs at law and next of kin of David O. Seek, late of Prince George's County, Maryland."

Due to the fact that there was some question as to the marital status of two of the heirs-at-law of David O. Seek, Sr., on May 24, 1955, Ernest J. Seek, as complainant, filed a bill of complaint in the nature of a partition proceeding, (Code, 1951, Article 16, Section 170), against the remaining heirs-at-law of David O. Seek, Sr., including Elizabeth Camilla Robinson. He alleged the parties' ownership of the aforementioned tracts; that the decedent left no personal property; and asked that notice to creditors be given in that proceeding in lieu of administration. Code, 1951, Article 93, Section 119. He further alleged that the property was not susceptible of partition in kind among the parties. He submitted the aforesaid contract from the Talberts for the purchase of the property for $8,200.00. He alleged that he believed it was a fair and reasonable offer for the property, and that he believed that the heirs-at-law of the decedent would be willing to accept said offer for the sale. He filed the contract as an exhibit. He asked that the contract be ratified and confirmed; that a trustee be appointed to convey the real estate in accordance with the terms of the contract of sale; that the proceeds of sale be distributed among the heirs-at-law of David O. Seek, Sr., according to their interest in the property; that notice to creditors of David O. Seek, Sr., be given; and for other and further relief.

Answers were filed by each of the nine defendants in which they neither admitted nor denied the allegation that the price of $8,200.00 was a fair and reasonable price for the property,

but stated that they believed that such a contract had been procured from the Talberts for $8,200.00. They also admitted that they were willing for the court to ratify the Talbert contract of sale and consented to the appointment of a trustee to make conveyance.

Testimony was taken to establish the fair value of the property. This was to the effect that $8,200.00 was the "top price". Prior to the presentation of the case to the chancellor for final decree, on July 12, 1955, W. Carroll Beatty, attorney for Ernest J. Seek, filed in the case a report alleging that, subsequent to the taking and filing of testimony, one G. R. Carson, on June 27, 1955, submitted to Mr. Beatty a signed offer to purchase the property for $9,200.00 cash and deposited with Mr. Beatty a signed contract with a certified check of $1,000.00 as deposit. He further alleged that the new contract and deposit were made and executed on the date when Mr. Beatty was presenting the case to the court for ratification. Upon advising the court of the additional offer made, he was directed to communicate with the Talberts to determine whether or not they would meet the Carson offer and, if so, that both of the proposed purchasers be given an opportunity to present sealed bids for the purchase of the property. He also alleged that he was unable to reach the Talberts until July 7, 1955, and he suggested to the Talberts that they advise him within one week whether they would meet the Carson offer.

As a result of that report, the chancellor on the same day, July 12, 1955, passed an order in which he stated that the additional offer had been made and that it might be to the best interest of all the parties to consider the new contract rather than the one filed in the proceedings. The chancellor ordered that as all the owners were adults and consented to the appointment of a trustee, Mr. Beatty be appointed trustee upon filing a bond of $10,000.00, with power to sell the property for the best price available. Mr. Beatty was to determine whether or not the Talberts would be willing to make an additional offer equal to the Carson offer. If the Talberts did not agree to do so, then the trustee should convey the property unto Carson. In the event that the Talberts were willing

to meet the Carson offer, Mr. Beatty was to call upon the Talberts and Carson and any other persons who might be interested in purchasing the property to submit to Mr. Beatty, at a time and place, sealed bids for the purchase of the property accompanied by certified checks for $1,000.00. When such sealed bids had been received, *the trustee should proceed to make sale of said property unto the highest bidder*, "the same to be reported and accounted for in accordance with the law in such case made and provided." (Italics supplied here.)

In accordance with that order Mr. Beatty gave notice that he would receive bids for the purchase of the property at 10:30 A. M. on July 16, 1955, at his office. On July 19, 1955, Mr. Beatty, as trustee, filed a report stating that the following bids had been received, each accompanied by a certified check in the amount of $1,000.00: G. R. Carson, $9,855.00; Lewis J. Talbert and Kathleen D. Talbert, $10,-695.00; and Dorothy E. Sousa, $10,800.00. He further reported that he had advised all bidders that he would report those bids to the court and would ask for the acceptance of this highest bid. He further reported that after the receipt of the sealed bids, Mr. Talbert advised the trustee that he would like to submit a contract for an additional amount above the aforesaid highest sealed bid offered. He advised Mr. Talbert that he would report the bids to the court and, if he submitted a contract for an additional amount, he would also report that to the court. Upon contacting the persons who had submitted the sealed bids, he was advised by Carson that he was no longer interested in the property. Mr. Talbert said he would meet with the trustee at a time when the other bidders could be present, at which time competitive bidding could be made. Mrs. Dorothy E. Sousa, the party submitting the highest bid on July 16, 1955, insisted that her bid be submitted to the court. He further reported that he had since received another proposed contract from the Talberts to purchase the property for $11,200.00.

Upon the submission of that report, on the same day, July 19, 1955, the chancellor ordered the trustee to accept the final sealed bid and offer for the purchase of the property for

$10,800.00, from Mrs. Dorothy E. Sousa and further ordered the trustee to convey the property to her.

On August 11, 1955, the Talberts, by their present attorneys, filed a petition asking that they be permitted to intervene in the cause to vacate the orders of July 12th and July 19th, aforesaid. On the same date the chancellor granted the Talberts permission to intervene. Thereupon on August 19, 1955, the Talberts filed a motion in which they stated that the proceedings on their face disclosed a valid contract for the sale and purchase of the property, with the interveners as purchasers and the heirs-at-law of David O. Seek, Sr., as sellers, all *sui juris;* that such obligation was in existence prior to the time of the entries of the orders of July 12th and July 19th; that that obligation having been entered into by the parties, who were all *sui juris,* was not then and is not now subject to impairment, judicial or otherwise. They asked the chancellor to vacate the orders of July 12th and July 19th and to ratify the contract of sale of January 25, 1955, set out in the bill of complaint.

Upon that motion the chancellor set the cause down for hearing on September 9, 1955, and ordered that notice be given the Talberts and Mrs. Dorothy E. Sousa. Mrs. Sousa did not appear at that hearing but forwarded the chancellor a letter in which she stated that the Talberts had a fair opportunity to submit their best offer in a sealed bid; that she was the highest bidder; and that her bid of $10,800.00 should be accepted. As a result of that hearing, on October 3, 1955, the chancellor filed an order denying the motion of the Talberts to vacate the orders of July 12th and July 19th. From that order the appellants, as interveners, appeal to this Court.

The appellants claim that, because the heirs-at-law of David O. Seek, Sr., were all *sui juris,* the aforesaid contract of January 25, 1955, was binding; that the aforesaid clause stating that the contract was subject to ratification by the court placed no disability on the appellees to so contract; that they are now bound by this contract to sell them the property for the sum of $8,200.00; and that the court should ratify the contract of sale of January 25, 1955.

In the alleged contract of January 25, 1955, as above set

out, the appellants consented to the partition suit which gave the equity court jurisdiction of the case. They, therefore, consented to the court assuming jurisdiction. In their brief they admit that when such jurisdiction is once acquired it is not defeated by subsequent events. Code, 1951, Article 16, Section 271, provides in part: "No sale made by a trustee appointed by the court shall be valid unless such sale is confirmed by the court; * * *." It is said by this Court in *Bolgiano v. Cooke,* 19 Md. 375, 391: "Trustees appointed by decrees of a Court of Equity, to sell real estate, are agents or instruments of the Court; sales made by them, are transactions between the Court and the purchaser, and as such, are regulated by all the principles of equity applicable to judicial sales. *Glenn v. Clapp,* 11 Gill & J. 1. *Duvall v. Speed,* 1 Md. Ch. 229. *Goldsborough v. Ringgold,* Ib. 239. *Perren* [*Perrin*] *v. Keithly* [*Keithley*], 9 Gill 412. Before the ratification of a sale made by authority of a Court of Equity, all objections within these limits are open for consideration." It is said in *Hunting v. Walter,* 33 Md. 60, 62: "Until the final ratification, a sale, made by order of a Court of Equity, is an executory contract, open to objection, and will not be enforced, if it is inequitable and against good conscience to do so." "In all sales made under the authority of a decree of a court of equity, the court is the vendor, acting for and in behalf of all parties interested. The contract of sale is a transaction between the court as vendor, and the purchaser; and the contract is never regarded as consummated until it has received the sanction of the court." *Miller's Equity Procedure,* page 566, Section 486, and cases there cited. The trustee is the mere agent of the court. Until such sale by a trustee is ratified by the court, it is an executory contract. *Miller's Equity Procedure,* page 602, Section 510. "Before ratification the transaction is merely an offer to purchase which has not been accepted." *Hanover Fire Ins. Co. v. Brown,* 77 Md. 64, 71, 25 A. 989, 27 A. 314.

Although the appellants claim that the appellees are bound by the so-called contract of January 25, 1955, it is pertinent to note that the appellants consented to a reoffering of the property when they later submitted their sealed bid of

$10,695.00. At common law, the parties to a written contract have the right to rescind it by mutual consent, although there is no provision in the contract permitting them to do so. As long as the contract remains executory, the parties may, either in writing or orally, release themselves from the obligations of the contract, because the release of one party is sufficient consideration for the release of the other. However, to rescind it without the option to do so or without the consent of the other party, in the absence of fraud, duress or undue influence, such party must be estopped by his own conduct or the equities of his position. *Vincent v. Palmer,* 179 Md. 365, 19 A. 2d 183. In *Gibula v. Sause,* 173 Md. 87, 194 A. 826, the seller of a grocery store, because of the complaint of the party who was purchasing that store from the seller, that the weekly volume of business was not as represented, accepted the return of the keys and advised the purchaser to remain in his former occupation as he was not fitted for the grocery business. This was held by this Court to be an acquiescence by the seller in the abandonment of the contract of sale. It was said by this Court in the very recent case of *Great United Realty Co. v. Lewis,* 203 Md. 442, 450, 101 A. 2d 881: "It is, of course, beyond question that a contract may be mutually rescinded either by express agreement or by any act or course of conduct of the parties which clearly indicates their mutual understanding that the contract is abrogated. It is also accepted that where there is a mutual rescission of a contract, the parties are entitled to be placed *in statu quo* as far as possible. * * * *Harris v. Kirshner,* 194 Md. 139, 147, 70 A. 2d 47; *Nicolopoolos v. Hill,* 217 Ala. 589, 117 So. 185, 59 A. L. R. 185." See also *Grauel v. Rohe,* 185 Md. 121, 43 A. 2d 201.

The paper of January 25, 1955, being merely an offer for the property, the counter-offer of $10,695.00 made by the Talberts for the same property, without a statement that regardless of the counter-offer the original offer was not terminated, wiped out all former negotiations between the parties. It was said by this Court in *Ebline v. Campbell,* 209 Md. 584, 121 A. 2d 828, No. 152 This Term, filed April 10, 1956: "A counter-offer by one party relating to the same matter

as the original offer, is a rejection of the original offer, unless the offeror in his offer, or the offeree in his counter-offer states that regardless of the counter-offer the original offer shall not be terminated." We must therefore conclude that the appellees were not bound by the paper of January 25, 1955.

As to the subsequent action of the court in asking for sealed bids, as above set forth as a result of the offer of Mr. Carson to pay $9,200.00 for the property, the chancellor on July 12, 1955, before the sale was confirmed or ratified, called for sealed bids on the property. Mr. Beatty was to determine whether the Talberts would be willing to make an additional offer. The Talberts agreed to do this and made a subsequent sealed bid of $10,695.00, which was not the highest offer. The trustee had advised all the bidders that he would report those sealed bids to the court and would ask for the acceptance of the highest bid. This was a judicial sale made in the manner ordered by the chancellor. Thereby, Mrs. Sousa by her highest bid, which the chancellor thought adequate and fair, had acquired a right to purchase the property. The subsequent offer by the Talberts of $11,200.00 was made after she acquired that right. The appellees, the owners of the property, do not object to her bid.

A chancellor should not depart from the policy of encouraging purchasers at judicial sales by sustaining those sales fairly made in all respects and for a full price and should refuse to strip a purchaser of a right fairly acquired to purchase the property for a full consideration "merely because one who has had his day for free competition, demands that he be given a second opportunity." *Whitely v. Whitely,* 117 Md. 538, 545, 84 A. 68; *Gilden v. Harris,* 197 Md. 32, 41, 78 A. 2d 167. Once having accepted a bid, the trustee should not reopen the sale merely to let in disappointed bidders. *Cook v. Safe Deposit & Trust Co.,* 172 Md. 398, 404, 191 A. 713. The general rule is that if a trustee, acting diligently and without fraud, accepts an offer at private sale for the most that he is able to obtain for the property *at the time,* and reports that offer to the court, it will not be set aside merely because someone else is *later* willing to give more for the

property. If this were not so, prospective buyers would be unwilling to deal with a trustee because as soon as the figure at which they offer to purchase is reported, it might be immediately upset by someone offering a higher price. *Gilden v. Harris, supra.* See also *Knight v. Nottingham Farms, Inc.,* 207 Md. 65, 113 A. 2d 382.

We are therefore of opinion that the chancellor was correct in denying the motion of the appellants to vacate the order of July 12, 1955, providing for sealed bids for the property, and the order of July 19, 1955, ordering the sale to Mrs. Dorothy E. Sousa.

*Order affirmed, with costs.*