UNITED STATES of America and The Western National Bank of Baltimore and Arthur H. Doll, Trustee, and George Norrish and Louise Browning, Intervenors,

v.

EASTERN WOODWORKS, Inc.

Civ. No. 9171.

United States District Court
D. Maryland.

May 7, 1957.

96

Walter E. Black, Jr., U. S. Atty., John R. Hargrove, Asst. U. S. Atty., Clarke Murphy, Jr., Baltimore, Md., for intervenors.

Abram C. Joseph and Calman A. Levin, Baltimore, Md., for defendant.

R. DORSEY WATKINS, District Judge.

These proceedings were begun on September 27, 1956 by the filing of a verified petition by the original plaintiffs to foreclose a deed of trust from defendant dated June 30, 1955, in the amount of $25,000, in the note secured by which the Small Business Administration on the same date had acquired a ninety (90) per cent interest. The deed covered all machinery, equipment, furniture, fixtures and other chattels located in the building or on the premises at 1300 Bayard Street, Baltimore, Md. The petition alleged that there was due, unpaid and owing a principal balance of Twelve Thousand, five hundred dollars ($12,500) with interest to September 26, 1956; that defendant would be unable to pay the next installment due October 30, 1956 or any other installments; that defendant would be liquidated in the near future; that since the payment of the last installment on August 6, 1956 there had been numerous suits and judgments against the defendants; that distraint proceedings and levy thereunder had been taken by the landlord against the property of defendant, including that covered by the deed of trust, and that the Trustees and the United States of America are of opinion that the security of the note and deed of trust are in jeopardy.

The note provided in part that:

"* * * Payee is authorized to declare all or any part of the indebtedness immediately due and payable upon the happening of any of the following events: * * * (6) the institution of any suit affecting the undersigned deemed by the Payee to affect adversely its interest hereunder in the Collateral or otherwise * * *"

Original plaintiffs alleged that the distraint and levy on the property under the deed of trust by the landlord constituted a legal action adversely affecting the collateral, and was a violation of the provisions of the note. They asserted an exercise of their rights to declare the indebtedness due and owing immediately,

and that they had requested the Trustees to foreclose the deed of trust, sell the property secured thereby, and apply the proceeds in accordance with the provisions of the deed of trust.

The petition prayed for an order directing a sale under the deed of trust, upon the giving of bond by the Trustees; a ratification; and such other and further relief as might be necessary. The remaining prayer, of particular significance, was:

"(c) To direct that before making such sale, said Trustees shall advertise said property for sale in a newspaper of general circulation in Baltimore City at least twice by the 10th day of October, 1956."

On September 27, 1956 this court passed an order in the form presented with the petition, directing the Trustees to sell the property described in the deed of trust at public auction:

"after having first notified all interested parties and having advertised the sale in a newspaper of general circulation in Baltimore City, State of Maryland, *in the manner usually prescribed for advertising chattel foreclosure sales in Baltimore City,* or at private sale for the best price obtainable."

The order also contained provisions, not here important, as to the Trustees' bond, terms of sale, and for the payment of the proceeds into the registry of the court.

On October 3, 1956, George Norrish and Louise Browning filed a petition for leave to intervene. They alleged that they were owners of the Bayard Street property leased to defendant; that defendant had failed to pay rent for five months, and also had failed to make certain other payments for excess real property taxes constituting additional rent, the total aggregating $6,094.67; and that on September 13, 1956 they had distrained upon the personal property "found" on the Bayard Street premises. The petition also recited the absence of any proceedings to replevy the property; the delivery on September 26, 1956 of an order to the Chief Constable of the Peoples' Court of Baltimore City to sell the property distrained upon; and the institution of these proceedings on September 27, 1956. Petitioners claimed that the lien of the distraint was superior to the lien of the deed of trust, but that to "facilitate and expedite an orderly public sale of the property, your petitioners desire to intervene in these proceedings and have the court order a joint sale, without prejudice to the rights of any parties, and the proceeds from the said sale to be paid into court to be distributed in accordance with the decision" of this court.

On the same day, with the consent of the original plaintiffs herein, the following order was passed:

"1. That the said George Norrish and Louise Browning be and they are hereby allowed to intervene and become parties in the proceedings.

"2. That the chattels of Eastern Woodworks, Inc. and other personal property under distraint and subject to the deed of trust be sold jointly and that the proceeds of said sale be paid into the Registry of this Court to be distributed as this Court shall direct.

"3. That the intervention of George Norrish and Louise Browning agreeing to a joint sale does not subordinate their rights or prejudice their rights under the distraint as originally made."

At the same time the individual trustee representing the holder of the remaining ten (10) percent interest in the Note asked leave to resign. This was granted, and Arthur H. Doll, of the Small Business Administration was substituted in his place.[1]

---

1. Apparently the local bank for which the individual Trustee was acting preferred to have it appear that the Small Business Administration, rather than it, was responsible for the foreclosure. The substitution eliminated Trustees' commission.

The Trustees filed a report of sale in which they stated that "having given notice of the time, place, manner and terms of sale, by advertisement inserted in the Daily Record, a newspaper published in Baltimore, Maryland, on October 2, 1956 and October 10, 1956" the sale was made at 10:30 a. m. on October 10, 1956, and the property was sold for Eleven Thousand, nine hundred sixty-two dollars ($11,962) "being the highest bid therefor." The advertisement referred to the sale as having been made by virtue of a decree of this court in this case.

Shortly prior to the filing of the report of sale, a petition was filed by defendant, asking that the sale be "set aside" and declared "to be null and void." Various grounds were alleged, which will be considered separately, but not necessarily in the order in which they appear in the petition.

1. Only a part of the chattels described in the deed of trust were sold.

I find as a fact from the weight of the credible evidence that all property described in the deed of trust, and located at the Bayard Street property on October 10, 1956, was sold for the account of the Trustees.

Testimony was offered strongly indicating, if not clearly proving, that certain property located at the Bayard Street location had in September 1956 been removed by the Manager of Operations of defendant to another location operated by such Manager on his own account. Whether or not this was part of the mortgaged property, its omission from the sale under these circumstances would not affect the validity of the sale of that part of the mortgaged property in fact sold, whether it represented all or only part of the mortgaged chattels.

2. That without the consent of defendant, "various agreements violative of the legal rights of" defendant "were made by the Trustees and/or persons acting for said Trustees with the landlord who had distrained on chattel property aforementioned and with other parties wrongfully holding mortgaged property."

No evidence in support of this claim was offered, and I rule as a matter of law that this objection is not sustained.

3. That neither the corporate nor substituted individual Trustee "was personally present at the sale of the property mentioned herein, in consequence of which your petitioner's rights have been greatly prejudiced."

Although neither Trustee was physically present at the sale, there was present the Liquidation Examiner of the Small Business Administration regularly assigned to attend sales of collateral securities. He testified without challenge that he attended the sale as the representative of the Small Business Administration and of the local bank.

Although it is the better practice for a Trustee to attend a foreclosure sale, absence would not be sufficient of itself to invalidate a sale. See Wicks v. Westcott, 1883, 59 Md. 270, 279. I find as a fact and conclude as a matter of law that under the above circumstances the failure of a Trustee physically to attend the sale did not prejudice the defendant, and does not constitute a valid ground of objection.

4. "That no attempt was made by the said Trustees herein to take advantage of a legitimate offer to buy said chattels at private sale."

I find from the weight of the credible evidence that very shortly before the sale began, a potential purchaser of the mortgaged property as an entirety approached the representatives of the landlord and the Liquidation Examiner representing the beneficiaries of the Note, and asked if the property could be purchased privately. No specific figure was mentioned by such potential purchaser at any time before the sale began.

I therefore find this objection to be without merit.

5. That the chattels covered by the deed of trust were not sold for the best price obtainable, because of the fact

that a legitimate increased bid was declined before final sale.

I find from the weight of the credible evidence that the chattels were first offered as a single lot, or entirety, and that after an opening bid of $3,000, the thirteenth and final bid was $9,600. Thereafter the chattels were offered by lots, the aggregate after the completion of all bids being $11,962. After lots aggregating 60–65% of the chattels had been closed, and the total was approaching $9,600, the potential purchaser of the chattels as an entirety at private sale (and the bidder of the $9,600 figure), approached the Liquidation Examiner and either said he would offer $12,500, or asked the Liquidation Examiner if he would entertain an offer of $12,000–$12,-500. The Examiner replied that he did not think he could under the circumstances; he did not think it "upright and fair and square with the piece bidders." *However, no offer was made to the auctioneer.*

I therefore find that this objection is without merit.[2]

■■■ 6. "That contrary to the Order of this Honorable Court the aforesaid chattel foreclosure sale was not properly advertised in that the manner usually prescribed for advertising chattel foreclosure sales in Baltimore City requires publication of the advertisement in a newspaper of general circulation in Baltimore City, at least three times, the first at least ten days prior to the date of sale, but that the advertisement given by the said Trustees was inserted only two times in a newspaper of general circulation in Baltimore City, the first advertisement being only eight days prior to sale, all of which was contrary to the manner usually prescribed for advertising chattel foreclosure sales in Baltimore City."

The defendant offered as evidence of "the manner usually prescribed for advertising chattel foreclosure sales in Baltimore City" four forms currently, and for many years prior hereto, used by the Circuit Court and the Circuit Court No. 2 of Baltimore City.[3] The forms consisted of two decrees for the sale of chattel mortgaged property and two reports of the sale of the Trustee appointed by, and acting pursuant to the terms of, said decree. These forms require at least ten days' notice of the sale by advertisement but are silent as to the number of insertions required. The defendant in addition to these exhibits relied heavily on the case of Owens v. Graetzel, 1924, 146 Md. 361, at pages 372–373, 126 A. 224, at pages 228–229, 39 A.L.R. 943, in which the court, in holding that twenty days' notice was not a strict compliance with the terms of a decree for the sale of certain leasehold property when the decree provided for at least three weeks' notice, said:

"The proceeding in this case is entirely statutory, and in order to make a valid sale under its provisions it is incumbent upon the party proceeding to make such sale to com-

2. The auctioneer, with 35 years experience in chattel sales, testified that when property was offered as an entirety and in lots he always knocked it down to the higher of the two; that when the "sum of the detailed bids goes over the entirety" the entirety bidder was "out". It would appear that any prospective bidder was given notice of the manner in which the auction was to be conducted by the advertisement appearing in The Daily Record which stated "The above equipment, etc., excluding the two motor vehicles will be offered as an entirety, the bid reserved, then offered in detail and sold in the manner producing the greatest amount of money." As, however, the auctioneer testified flatly and without contradiction that no increased offer was made to him for the entirety, it becomes unnecessary to determine whether the practice is legally sound. "A chancellor * * * should refuse to strip a purchaser of a right fairly acquired to purchase the property for a full consideration 'merely because one who has had his day for free competition, demands that he be given a second opportunity.'" (Talbert v. Seek, 1956, 210 Md. 34, 45, 122 A.2d 469, 474).

3. These two courts are the courts of Baltimore City exercising general equity jurisdiction.

ply strictly with the provisions of the statute. The statute here provides that the judge of the court to whom the case is submitted may appoint a trustee or trustees for making such sale, and that the said trustee or trustees, after having given bond, and after the arrival of the period limited by the decree for sale, sell the property, agreeably to the terms of said decree. The terms of the decree are, by force of the statute, made a part of the statute and must be as fully and strictly complied with as if they were in terms embraced in the statute. Among the terms of the decree of sale is the provision that the trustee shall make the sale after having given at least three weeks' notice by advertisement inserted in such daily newspaper or newspapers, published in the City of Baltimore, as he shall think proper, of the time, place, manner, and terms of sale."

What the defendant has failed to consider is that there are at least three statutory methods of foreclosure (Miller on Equity Procedure, sections 445–485). One is by what has been referred to as "formal proceedings" wherein the sale is made under a decree or order of the court *upon such terms and conditions as the court determines* (Art. 16 of the Code of Public General Laws of Maryland, 1951 Edition, Sections 253, 261). A second method of foreclosure is under an assent to a decree for the sale contained in the mortgage wherein upon the filing of the recorded mortgage and a petition praying for a decree the court appoints by the decree a Trustee or Trustees to make the sale "upon such terms of sale as to the said court may seem proper or as provided in said mortgage" (Art. 66 of the Code of Public General Laws of Maryland, 1951 Edition, Section 6). This is the type of proceeding the court was considering in Owens v. Graetzel, supra, on which the defendant relies. "Such a decree may properly be entered at any time after the execution of the mortgage, whether there is or is not at the time a default on the part of the mortgagor in respect to the covenants of the mortgage, but there can be no sale under the decree until there is a default * * *." (Doeller v. Mortgage Guarantee Company, 1934, 166 Md. 500, 507, 171 A. 856, 859; Better v. Williams, 1954, 203 Md. 613, 616–617, 102 A.2d 750). The two decrees introduced into evidence by the defendant provide that the petition and exhibits having been submitted and considered, the mortgaged property "be sold, *at or after any one of the periods limited in the mortgage filed* for the forfeiture of said mortgage. " (Emphasis supplied.) This is the form used when the mortgage is being foreclosed under an assent to a decree for the sale. (Miller on Equity Procedure, Section 477, p. 557.) A third method of foreclosure, and the one relevant to this case, is under a power of sale contained in the mortgage (Art. 66 of the Code of Public General Laws of Maryland, 1951 Edition, Section 5).

The instrument involved in the instant proceedings was in form a deed of trust but in effect a chattel mortgage. "One of the common forms which a mortgage takes is a deed of trust, and the fact that the transfer assumes this form does not affect the nature of the transaction or make it any the less a mortgage." (14 C.J.S. Chattel Mortgages § 9, p. 602; cf. Bank of Commerce v. Lanahan, 1876, 45 Md. 396, 407–408).

The deed of trust contained no assent to a decree for the sale of the mortgaged chattels but rather granted a power of sale upon default. The notice required in sales made in pursuance of such authority is explicitly set out in section 5 (c) of Art. 66 of the Code of Public General Laws of Maryland, 1951 Edition, as being "in the sale of personal property not less than five days' notice of the time, place and terms thereof by advertisement in some newspaper published in the county or city where the mortgaged property or some portion thereof is located * * *." That sufficient notice, as required by Section 5(c) and by

the terms of the deed of trust itself,[4] was given is not challenged but the defendant contends that failure to comply strictly with the court's order that the sale be advertised "in the manner usually prescribed for advertising chattel foreclosure sales in Baltimore City" requires the sale to be set aside.

The defendant's position cannot be supported for several reasons. First, the word "prescribed" is a strong word and, even assuming for the moment that it is customary in Baltimore City when foreclosing under a power of sale to give notice in excess of that required by statute, the court's order would more aptly refer to a statutory provision as to notice than to sufficient notice as established by custom or practice. Nor can the wording of the order fairly be construed as directing that notice be given as usually prescribed for a foreclosure under an assent to a decree for the sale, when the deed of trust contained no such assent but rather purported to grant a power of sale. Secondly, the defendant has offered no evidence that the practice followed in Baltimore City in advertising a foreclosure under a power of sale is other than that set out in Section 5(c).[5] The defendant has relied solely upon forms entitled "Decree for the Sale of Chattel Mortgaged Property" and "Report of Sale of Trustee" but a comparison of the provisions of Section 5 (power of sale) with those of Section 6 assent to a decree for the sale)[6] indicates

---

4. The deed of trust provided that, upon default, the mortgaged chattels should be sold for cash, as a whole or in parcels, at such time and place and after such previous public advertisements as the one exercising the power of sale should deem advantageous and proper.

5. A witness for the defendant testified that the forms in evidence, entitled "Decree for Sale of Chattel Mortgaged Property" and "Report of Sale of Trustee", were those customarily used in chattel foreclosures but no question was directed to the witness attempting to distinguish a proceeding to foreclose under a power of sale from one under an assent to a decree for a sale.

6. Sec. 5:
"(b) Before any person so authorized shall make any such sale, he shall give bond to the State * * * to abide by and fulfill *any order or decree which shall be made by the court in relation to the sale* of such mortgaged property *or the proceeds thereof;* * * *. Upon the docketing of an appropriate suit in such court of equity and the filing therein of the mortgage exhibit, or duly certified copy thereof, with or without the bond described in this section, the jurisdiction of the court shall forthwith attach.
"(c) In all sales made in pursuance of such authority the party offering the same for sale *shall give* * * * in the sale of personal property *not less than five days' notice* * * *.
"(d) After a sale has been confirmed by the court and the purchase money paid, the person making such sale shall convey the property to the purchaser, or *if the vendor and purchaser be the same person the court* confirming the sale *shall, in its order of ratification, appoint a trustee to convey the property* to the purchaser on the payment of the purchase money; provided, however, that such a trustee need not give a bond unless the court shall deem it necessary and prescribe the same in the decree."
Sec. 6:
(a)
"* * * it shall be lawful for the mortgagees * * * to submit to a court of equity * * * the said mortgages * * * and the equity court to which the same is so submitted *may thereupon decree that the mortgaged property shall be forthwith sold* if default has already taken place * * * and the court shall *appoint by said decree a trustee or trustees to make such sale,* and shall require bond and security for the performance of the trust as is usual in cases of sales of mortgaged premises.
"(b) The trustee or trustees so appointed, after having given the required bond, may, after the arrival of the period limited by the decree for a sale, sell, *agreeably to the terms of said decree,* the mortgaged property or any part thereof and such sales if finally ratified by said court, and the conveyances thereupon made shall have the same effect as if the same had been made under decrees between the proper parties in relation to the mortgages and in the usual course of said court; and the proceeds of such sales shall be accounted for, to,

that the defendant's reliance on these forms is misplaced. The forms follow almost verbatim the wording of section 6 wherein the authority to sell is derived from a decree of the court. In contrast, under section 5, no decree is necessary as the authority to sell arises out of the power granted in the mortgage, the exercise of the power of sale upon default being conditioned primarily upon the giving of bond. (Wilson v. Watts, 1856, 9 Md. 356, 459; Warehime v. Carroll County Building Association, 1876, 44 Md. 512, 517; Mackubin v. Boarman, 1880, 54 Md. 384, 387; Heider v. Bladen, 1896, 83 Md. 242, 34 A. 836). Section 5(d) does not contemplate the appointment of a Trustee until after the sale at the time of confirmation and then only for the purpose of conveying the property in the event that the one making the sale and the purchaser are the same. The forms submitted clearly decree that a sale *shall be made* and provide for the appointment of a Trustee or Trustees, who after having given bond, "shall then proceed to make the sale", which sale still is subject to future confirmation and ratification by the court. While section 5(d) does require one authorized to make the sale to abide by and fulfill any order or decree of the court, the Maryland Court of Appeals has construed this language in prior enactments as meaning a decree after the sale, not a decree prior to, or ordering, the sale. (Warehime v. Carroll County Building Association, supra, 44 Md. at page 517, 520 [7]; Bachrach v. Washington United Cooperative, Inc., 1943, 181 Md. 315, 319–320, 29 A.2d 822 [8]).

In the Warehime case, as it was wholly impossible for the person exercising the power of sale to comply with the mode of notice required by the terms of the mortgage, the sale was made in noncompliance of said terms, reported, and confirmed. On appeal, the court, recognizing that the terms of the mortgage are substituted for a decree and that the report of the sale is the "first official intercourse" of the vendor with the court, although the trust commences with the giving of bond, expressed doubt that a court would entertain jurisdiction to modify the terms of the sale without a sale first having been made and reported, thereafter the court's supervisory powers attaching and being exercised under general equitable principles. Whether or not this doubt would be dispelled by the present proviso in section 5(b) [9] that the jurisdiction of the court shall attach upon the docketing of the case and the filing of the mortgage exhibit need not be considered for the purposes of this case. Suffice it to say that Warehime v. Carroll County Building Association, supra, is still authority for the general proposition that no decree prior to the sale is necessary to effectuate a valid sale under a power of the type authorized by section 5. A recent case citing section 5(c) and dealing with notice and the manner of sale indicates that only the terms of the mortgage and the statute need be met, in a foreclosure under a power of sale (de Tamble v. Adkins, 1956, 210 Md. 414, 420, 426, 124 A.2d 276; accord, Blanch v. Collison, 1938, 174 Md. 427, 432, 199 A. 466).

The fact that this court entered an order on September 27, 1956 directing the "Trustees", not appointed by the court under a decree but so designated by, and acting pursuant to, the terms of the deed of trust, containing a power of sale, to sell the chattels described in the deed of trust can not change the proceedings from a foreclosure under section

---

and be distributed by, said court, in the manner usual in cases of sale under decrees of said court." (Emphasis supplied.)

7. The statutory provision was then contained in the Code of Public General Laws of Maryland, 1860 Edition, Article 64, Section 6.

8. The statutory provision was then contained in the Code of the Public General Laws of Maryland, 1939 Edition, Article 66, Section 8.

9. Act of 1950, Ch. 12, section 6(b).

5 to a foreclosure under section 6.[10] This court can conclude only that the forms relied upon by the defendant relate to foreclosure under section 6. There is no evidence whatsoever that these forms are used in Baltimore City in foreclosures under section 5 and, indeed, all reasonable inferences are to the contrary. Accordingly, compliance with the statutory provisions of section 5(c) relative to notice is held to be a compliance with the court's order that notice be given in the manner usually prescribed for advertising chattel foreclosure sales in Baltimore City, the qualification —foreclosure under a power of sale—being implicit.

However, even were the court to conclude otherwise, that is, that its order directed the Trustees to give at least ten days' notice, the final determination of the defendant's objection as to sufficiency of notice would be no different. The sale having been made and reported to this court under oath, the proceedings on such report are the same as if the sale had been made by a trustee under a decree of the court; the court having full power to hear and determine any objections to the sale and to confirm the sale or set it aside. (Article 66 of the Code of Public General Laws of Maryland, 1951 Edition, Section 7(a); Hubbard v. Jarrell, 1865, 23 Md. 66, 79; Ivrey v. Karr, 1943, 182 Md. 463, 469, 34 A.2d 847).

> "It is the well understood law of this State, that in sales made under the authority of decrees in Chancery, the Court is the vendor, the trustee being the mere agent or attorney of the Court, under a special delegated authority. Andrews v. Scotton, 2 Bland 629. And the true character of such a sale is, that it is a transaction between the Court and the purchaser, and a private sale as well as a public sale may be made, if the Court deem it advantageous. And after setting aside the sale reported by the trustee, as formally irregular, the Court may revive the terms of the contract with the same purchaser, if no other objections existed, and those terms are deemed advantageous to the parties, who are in Court prepared to protect their interests. Such is the language of the Court of Appeals in Glenn v. Clapp, 11 Gill. & J. [1] 8, 9.

> "Regarding the trustee as the agent of the Court in making the sale, it would seem to follow necessarily, that though he may depart from the special directions of his principal, and thus exonerate the latter from the obligation to confirm his act, yet, if he thinks proper to do so, the act of the agent will be as binding as if he had pursued, in all respects, those directions. A subsequent ratification of the act having the same effect, as a previous authority.

> "The Court, it is true, must take care, in confirming the acts of its agents who have not followed the directions given them, that no injustice is done the parties interested; and that they have an opportunity of being heard, before their rights are decided upon. But if after this is done, the Court is satisfied that justice requires the ratification of a sale made by a trustee of this Court, there is no principle which forbids it, though the trustee may not have observed those formalities, which were prescribed for him." (Harrison v. Harrison, 1848, 1 Md.Ch. 331, 332–333; accord Speed v. Smith, 1851, 4 Md.Ch. 299, 309; Brooks v. Hays, 1866, 24 Md. 507, 519).

Even Owens v. Graetzel, supra, 146 Md. at page 373, 126 A. 224, on which the defendant so strongly relies for support of its position that anything less than strict compliance with the court's de-

---

10. This is likewise true of the order of October 3, 1956 requiring the substituted Trustee to continue the proceedings and to comply with the original order in the cause, the order of September 27, 1956.

cree must, of necessity, result in a refusal to ratify the sale, clearly recognizes that the court has the power not to hold the Trustee to strict compliance when it would be unjust and inequitable to do so.

Where one claims under a judicial sale "the soundest principles of justice and policy seem to demand that every reasonable intendment should be made to support the titles of *bona fide* purchasers of real property, and courts of justice are not disposed to impair their safety by insisting on matters of form; they can only be avoided for substantial legal defects." (Davis v. Helbig, 1867, 27 Md. 452, 466). Fair and substantial, rather than strict, compliance with the statutory provisions relating to notice in sales made pursuant to a power of sale is sufficient to protect the rights of bona fide purchasers. (White v. McClellan, 1884, 62 Md. 347, 350, 353). While a sale under the authority of a decree is not "regarded as consummated until it has received the sanction of the court" "[a] chancellor should not depart from the policy of encouraging purchasers at judicial sales by sustaining those sales *fairly made in all respects* and for a full price and should refuse to strip a purchaser of *a right fairly acquired to purchase* the property for a full consideration \* \* \*." (Talbert v. Seek, supra, 210 Md. at pages 43, 45, 122 A.2d at pages 473, 474). In considering the purpose and sufficiency of notice under a decree of court authorizing the sale, the Maryland Court of Appeals said in Farmers' Bank of Maryland v. Clarke, 1868, 28 Md. 145, at page 154:

"That the efforts of the trustees were to obtain a fair price, and that they acted in all that was done from the best motives, are facts uncontroverted. They have sworn that the sale was fairly made, and we are bound to accept their statement as true, until shown to be otherwise. This exception, as to the insufficiency of notice, stands upon the naked allegation, without the least attempt to show that there were persons who would likely have been bidders at the sale, left uninformed, or who were deceived or misled by the want of more extensive notice than was actually given. We can perceive no reason, therefore, for regarding the notice given by the trustees as insufficient, under all the circumstances of the case."

This test as to the sufficiency of notice, when applied to the facts of this case where notice in excess of that required by the statute and by the terms of the deed of trust was given, must result in the finding that the notice given by the Trustees was sufficient and resulted in no injustice being done the defendant.

I therefore find this objection to be without merit.

Upon submission of an appropriate order the sale will be ratified and confirmed.